Freddie LOTT, Plaintiff,

v.

MOSS POINT MARINE, INC.,
Defendant/Third Party
Plaintiff,

v.

UNDERWRITERS AT LLOYD'S
and CESI, Inc., Third Party
Defendants.

Civ. A. No. S90–0484(P).

United States District Court,
S.D. Mississippi, S.D.

June 5, 1991.

Louis Fondren, Pascagoula, Miss., for plaintiff.

Richard P. Salloum, Franke, Rainey & Salloum, Gulfport, for defendant/third party plaintiff.

Charles R. Ward, Arden J. Lea and William A. Marshall, New Orleans, La., for third party defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This cause comes before the Court on the Motion for Summary Judgment of the Defendant, Moss Point Marine, Inc. Having reviewed the Motion and the parties' briefs and authorities in relation to the Motion, the Court finds as follows:

### I. FACTUAL BACKGROUND

The Plaintiff in this action, Freddie E. Lott ("Lott"), is an adult resident citizen of Jackson County, Mississippi. The Defendant, Moss Point Marine, Inc. ("MPM"), is a Delaware corporation doing business in Mississippi. This action was originally filed in the Circuit Court of Jackson County, Mississippi. MPM removed the matter to this Court on the basis of diversity of citizenship. Therefore, the Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

MPM operates a shipyard located in Moss Point, Mississippi. In effect at the time of Lott's alleged accident on October 16, 1989, was a Service Agreement dated February 27, 1989, between the Trinity Marine Group and CESI, Inc., whereby CESI agreed to provide industrial labor personnel to MPM to work at its shipyard in Moss Point. MPM is a part of the Trinity Marine

Group. Although Lott was an employee of CESI, under the Service Agreement, Lott was furnished to MPM to work under its direct supervision.

Lott originally worked for a predecessor labor service employer, Manpower, Inc., which was taken over by CESI. Since September, 1989, Plaintiff performed all of his work at MPM. The rules and regulations provided to Lott by CESI required that he was to work under the direct supervision of CESI's customer, MPM. CESI's rules and regulations specifically state: "You work for and are paid by CESI, under the direct supervision of our CUSTOMER'S personnel. Employees should comply with all directions given by CUSTOMER supervisory personnel unless such instructions are not in accordance with CESI's, the CUSTOMER'S or generally accepted safety guidelines (OSHA)." All of Lott's tools and equipment, except for his work boots and hardhat, were provided to him by MPM. Lott worked under the direct supervision of James Crane and Mike Graham, MPM employees. CESI had no supervision on the yard and Lott performed the same work as other MPM-employed laborers. Lott worked the same hours as other MPM employees, punched in and out through the same time clock, and was subject to the same safety rules and general work requirements as other MPM employees.

CESI did not furnish any tools, did not directly supervise Lott and all of his work was performed at the MPM shipyard as instructed by MPM personnel. Although CESI retained authority to assign Lott to work for another client on a different job site at any time, CESI did not have any work leadermen to supervise Lott and was not responsible for the working conditions at MPM's shipyard in Moss Point. Additionally, if at any time MPM advised CESI that they did not want the Plaintiff to return to the shipyard, CESI would have followed those instructions. Further, if Lott was injured, he was required to report his injuries immediately to MPM supervision.

On or about October 16, 1989, Lott, while working on the job site of MPM, alleges that he injured himself when he slipped and fell while taping a sick bay restroom on a vessel being built by MPM. The faucet in the restroom had been leaking, and cardboard on the floor had gotten wet. The day before the accident occurred, Lott had been instructed by an MPM supervisor, James Crane, to assist CESI employee, William Tanner, in painting a section of the vessel, and Lott was taping the sick bay restroom in preparation for painting. On the morning of the accident, Lott was continuing this work with Mr. Tanner. Tanner was a painter, Lott was a laborer.

Immediately following the alleged accident, Lott reported the accident to Mr. Crane. Although Lott was not transported to First Aid on the day of the accident, the next day when he reported to work, Lott was immediately transported to First Aid.

As a result of his injury, Lott is currently receiving benefits under the Longshoremen and Harbor Workers' Compensation Act ("LHWCA"), from CESI's compensation carrier, Maryland Casualty Insurance Company.

MPM has moved for summary judgment, alleging that Lott's receipt of benefits under the LHWCA serves as his exclusive remedy and precludes him from maintaining this tort action against MPM. MPM recently named and brought in CESI and its insurer, Underwriters at Lloyd's London, as Third–Party Defendants in this action. The third-party complaint is based upon an indemnity clause in the Service Agreement and a hold harmless agreement.

## II. CONCLUSIONS OF LAW

In ruling on a motion for summary judgment, the Court must be convinced that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment "may, and should, be granted, so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Court finds that this is an

appropriate case for entry of summary judgment.

MPM contends that at the time of his accident, Lott was a "borrowed employee" of MPM and that he was covered by the LHWCA and is receiving benefits under the LHWCA. MPM further argues that receipt of benefits under the LHWCA is Lott's sole and exclusive remedy because the LHWCA bars all common law court actions against an employer. MPM explains that Lott's status as a borrowed employee renders MPM immune from tort liability here.

Before addressing MPM's borrowed employee argument, the Court observes that the purpose of the LHWCA, as stated by the Fifth Circuit, is as follows:

> The LHWCA was designed to provide an injured employee with certain and absolute benefits in lieu of possible common law benefits obtainable only in tort actions against his employer. *See Haynes v. Rederi A/S Aladdin*, 362 F.2d 345 (5th Cir.1966), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557. Although the coverage of the LHWCA is not contractual and does not depend upon the consent of the parties, nonetheless when an employee begins work for an employer under the coverage of the LHWCA, he is presumed to have consented to the Act's trade-off of possibly large common law damages for smaller but certain LHWCA benefits. And by the very act of continuing in employment, he may be assumed to agree that, considering the likelihood of injury and the likely severity of injury within the working conditions he experiences, the benefits offered by the LHWCA in the event of injury are acceptable.

*Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

■ Whether an employee is a "borrowed employee" is a matter of law for the Court to decide. *See Gaudet, supra; Ruiz v. Shell Oil Co.*, 413 F.2d 310, 314 (5th Cir.1969). In determining whether Lott was a borrowed employee, the Court must first determine which law controls that decision. Although this action was removed to this Court on the basis of diversity of citizenship, MPM's borrowed servant argument is based upon the fact that Lott is currently receiving benefits pursuant to the LHWCA. Therefore, the Court finds that federal law provides the rule of decision on the question of whether Lott is a borrowed employee. Even assuming, *arguendo*, that Mississippi law provided the controlling rule, the Court would conclude that Lott's suit here is nevertheless barred by the exclusive remedy provisions of the LHWCA. 33 U.S.C. § 905.

The Fifth Circuit also explained the basis for the borrowed servant doctrine in *Gaudet v. Exxon Corp.*:

> In *Standard Oil v. Anderson*, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) the Supreme Court recognized the concept of the borrowed employee or borrowed servant doctrine thusly:
>
> > One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all legal consequences of the new relation. *Id.* at 220, 29 S.Ct. at 253, 53 L.Ed. at 483.
>
> The court further explained:
>
> > It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished. . . . [In this] case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. *Id.* at 221, 29 S.Ct. at 254, 53 L.Ed. at 483.

*Gaudet, supra,* at 355. The *Standard Oil* case, *supra,* relates to the doctrine of *respondeat superior.* The courts have followed the same rationale in "exclusive remedy" cases.

In *Ruiz v. Shell Oil Co., supra,* the Fifth Circuit mentioned nine relevant factors to be evaluated in determining whether an employee is considered a borrowed employee of another. *Id.,* 413 F.2d at 312–313. In the later case of *Gaudet v. Exxon Corp.,* the Fifth Circuit listed these relevant factors as follows:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details for cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Gaudet,* 562 F.2d at 355.

In *Gaudet,* the Fifth Circuit explained that these factors are to be weighed as appropriate in each particular case. *Id.* at 356. In the case of *Hebron v. Union Oil Co. of California,* 634 F.2d 245 (5th Cir. 1981), the Fifth Circuit further explained that "the central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work." *Id.* at 247. This Court is of the opinion that the question of control is the primary issue in this case. There is no dispute in the case at bar that MPM had the power to control and direct Lott in the performance of his work. On the issue of control, the Fifth Circuit has explained the significance of control by distinguishing between the doctrines of *respondeat superior* and exclusive remedy:

Within the context of *respondeat superior* the focus on control in the traditional test of borrowed employee status is proper, because only if the employee acted under the orders of his employer should injuries to third parties be traced to the original negligence of the employer. In the instant case, however, instead of being a device to impute liability, the borrowed employee doctrine is a means to escape it through the exclusive remedy provisions of the LHWCA.

*Gaudet,* 562 F.2d at 356.

The Fifth Circuit has also suggested that when the negligence attributed to acts of the borrowed employer occurs while the borrowed employee is under the supervision and control of the borrowed employer, this may be sufficient for a finding of borrowed employee status and exclusive remedy immunity. *See Taylor v. Kay Lease Service, Inc.,* 761 F.2d 1107, 1110 (5th Cir.1985).

In this action, any negligence attributable to MPM occurred while Lott was working under the direct supervision and control of MPM supervisors. Therefore, the Court finds that MPM is entitled to the exclusive remedy immunity of the LHWCA. The mere fact that Lott remained under some control of CESI, his lending employer, does not mean that Lott could not be a borrowed employee of MPM. The Fifth Circuit has ruled that a lending employer need not sever completely his relationship with an employee because such a requirement would effectively eliminate the "borrowed employee" doctrine. *Melancon v. Amoco Production Co.,* 834 F.2d 1238 (5th Cir. 1988); *Capps v. N.L. Baroid–NL Industries, Inc.,* 784 F.2d 615, 617–618 (5th Cir. 1986), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986). Therefore, under the controlling federal law of this Circuit, Lott's state law tort claims in this case are foreclosed because of his status as a borrowed employee of MPM at the time of his accident.

As mentioned earlier, Lott maintains that Mississippi law controls the question of whether he is a borrowed employee. However, as the Court has suggested, even if Mississippi law were the controlling precedent in this case, this Court would conclude that Lott's claim against MPM is barred. Mississippi has long adhered to the "dual employment" doctrine. This doctrine provides that "a person may be a servant of two or more masters at one time as to one act." *Dependents of Roberts v. Holiday Parks, Inc.*, 260 So.2d 476, 478 (Miss.1972); *see also Robertson v. Stroup*, 254 Miss. 118, 180 So.2d 617 (1965).

█ Under the dual employment doctrine, "when an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has actually provided workmen's compensation insurance." *Ray v. Babcock & Wilcox Co., Inc.*, 388 So.2d 166, 167 (Miss.1980). In the case sub judice, the Court finds that Lott was engaged in dual employment with MPM and CESI as contemplated by these Mississippi cases. This dual employment further precludes any common law tort liability on the part of MPM. Under the "right to control" rule which is the traditional test of an employer/employee relationship, the Court finds that Lott was subject to the control of both MPM and CESI. *See Biggart v. Texas Eastern Transmission Corp.*, 235 So.2d 443, 444–445 (Miss.1970). Based upon the element of control, the Court finds that a statutory employer relationship did exist between MPM and Lott at the time of his accident. This statutory employer relationship precludes any common law liability on the part of MPM.

The Court finds it incongruous that MPM seeks, on the one hand, to shield itself from liability by characterizing CESI as an independent contractor but then claiming, on the other hand, that CESI employees are MPM's borrowed employees, so that liability may again be avoided, but such is the existing law that the Court must apply to this case.

Plaintiff Lott relies on *Clark v. Luther McGill, Inc.*, 240 Miss. 509, 127 So.2d 858 (1961). This case is distinguishable from *Clark* on at least two grounds. First, the duration of the employment at issue in *Clark* was only a few hours, whereas here Lott had worked at MPM's shipyard for several weeks prior to his injury. Secondly, while the decision in *Clark* does mandate that there be consent or acquiescence by the employee to the special or borrowed employment relation, *id.* 127 So.2d at 861–862, the Court finds that Lott did give such consent or acquiescence as required by applicable cases, by working at MPM's shipyard for some six weeks prior to his injury. Finally, the facts in *Clark* indicate that there were essentially two crews working side by side to accomplish a common goal, whereas here Lott was working as part of a singular work force being utilized by MPM. In every sense of the phrase, Lott was a "loaned servant" who had become, for all practical purposes, a part of MPM's work force. *See Runnels v. Burdine*, 234 Miss. 272, 106 So.2d 49 (1958).

For the reasons set forth above,

IT IS HEREBY ORDERED AND ADJUDGED that the Motion for Summary Judgment of Defendant, Moss Point Marine, Inc., is hereby sustained.

IT IS FURTHER ORDERED AND ADJUDGED that this action is hereby dismissed with prejudice.

A separate judgment will be entered consistent with this Memorandum Opinion and Order.

SO ORDERED AND ADJUDGED.