United States Court of Appeals,

Fifth Circuit.

No. 92-3078.

Patty Trahan BROWN, Wesley Brown, Individually and on behalf of this minor son, Jared Brown, Plaintiffs-Appellants,

Fidelity & Casualty Company of New York, Intervenor-Appellant,

v.

UNION OIL COMPANY OF CALIFORNIA, et al., Defendants-Appellees.

March 1, 1993.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before WISDOM and DUHÉ, Circuit Judges and DOHERTY[1], District Judge.

PER CURIAM:

Wesley Brown, injured while working on an offshore oil platform, sued Union Oil Company of California (Union), the owner and operator of the platform. The district court granted Union's motion for direct verdict after determining that Brown was Union's borrowed employee and, therefore, Union enjoyed tort immunity under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(a). Brown and an intervening insurance company appeal. Finding that factual issues exist, we reverse and remand for another trial.

## I. BACKGROUND

Brown was employed by Gulf & Inland Contractors, Inc. (Gulf Inland), which provided Brown's services to Union pursuant to a service contract. Brown worked as a roustabout, cleaning drilling mud off one of Union's platforms. Because Union did not have workers available to clean up the mud, it contacted Gulf Inland to provide workers for this purpose.

In December 1989, Brown worked his first hitch on the Union platform. Brown asserts that during his first hitch he was supervised by a Gulf Inland employee, but that at times Union would give him specific instructions. After taking time off during the Christmas holidays, Brown returned to the

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

Union job for his second hitch. During this period, he worked at night, unsupervised, as the only roustabout cleaning the platform. When he returned for his second hitch, Brown received no new instructions regarding his cleaning work, but continued to work at night under the cleaning instructions he received during his first hitch. On January 4, 1990, during the second hitch, Brown was injured while working on the Union platform.

Union provided Brown's transportation, food, lodging, and tools. Union did not have the right to terminate Brown's employment with Gulf Inland, but it had the right to terminate Brown's work relationship with Union. Gulf Inland paid Brown and provided him with employee benefits. His pay was based on time tickets that had to be verified daily by Union.

## II. DISCUSSION

To determine borrowed employee status, we consider nine factors:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work is being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

*Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir.1969); *Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1244 (5th Cir.), *reh'g granted on other grounds,* 841 F.2d 572 (5th Cir.1988). No single factor, or combination of them, is determinative; although, in many of our prior cases, this court has considered the first factor—control—to be the central factor.[2] *See, e.g., Melancon,* 834 F.2d at 1245, *Capps*

---

[2]However, in *Gaudet v. Exxon Corp.,* 562 F.2d 351, 356 (5th Cir.1977), *cert. denied,* 346 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978), this court deemphasized the control factor and stressed the importance of the fourth, fifth, sixth, and seventh factors.

*v. N.L. Baroid-NL Indus., Inc.,* 784 F.2d 615, 616-17 (5th Cir.), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986). The issue of borrowed employee status is a " "matter of law' for the district court to determine," *Melancon,* 834 F.2d at 1244, but some cases involve factual disputes on the issue of borrowed employee status and require findings by a fact-finder. *See Id.* at 1245 n. 13; *West v. Kerr-McGee Corp.,* 765 F.2d 526, 531 (5th Cir.1985); *Alday v. Patterson Truck Lines, Inc.,* 750 F.2d 375, 378 (5th Cir.1985). In *Melancon, West,* and *Alday,* factual findings were necessary concerning the third borrowed employee factor—whether the original employer and borrowing employer had an understanding or agreement on the issue of employee status.[3] In the instant case, factual findings concerning the first and third factors should have been made prior to the district court's determination of borrowed employee status. A brief discussion of the nine factors follows.

(1) Who had control?

At trial, the parties presented conflicting testimony regarding who instructed Brown on how, where, and when to clean the mud. Brown testified that during his first hitch with Union, he was supervised by a Gulf Inland employee, Jimmy Funge. Brown testified that Funge gave him cleaning instructions and assigned him to the night shift. He further testified that during his second hitch, he worked unsupervised, but continued to work at night under the cleaning instructions that Funge had given him earlier. During both hitches, none of Union's employees worked the night shift. Harry Granger, a Union employee, agreed that Brown worked unsupervised during the second hitch, but he testified that during the first hitch, he gave Brown specific cleaning instructions. Thus, a disputed factual issue exists regarding who gave Brown cleaning instructions and who assigned him to the night shift.

Although Brown asserted he never received cleaning instructions from Union, Brown testified that Union occasionally gave him other instructions, such as telling him to help out on other tasks when he had spare time. Brown testified that he would follow Union's instructions unless the instructions were contrary to Gulf Inland's policies or safety practices. Gulf Inland's superintendent

---

[3]In *Melancon,* there was a nonjury trial, and the district court made the factual findings. 834 F.2d at 1245 n. 13.

testified that if Brown was asked to do something against Gulf Inland's policies, Brown was instructed to call Gulf Inland to deal with the conflict.

With regard to the control factor, Brown presented evidence that he was not working under Union's supervision or its cleaning instructions. This first factor, which does not overwhelmingly support Brown's borrowed employee status, involves disputed factual issues. It should not have been taken from the jury.

(2) Whose work was being performed?

Brown was performing Union's work.

(3) Was there an agreement or understanding between Union and Gulf Inland?

The contract between Union and Gulf Inland provided:

> In performance of the work herein contemplated, [Gulf Inland] is an independent contractor, with the authority to control and direct the performance of the details of the work, Union being interested only in the results obtained, but the work contemplated herein shall meet the approval of Union.... [Gulf Inland] specifically agrees that *all persons employed by [Gulf Inland] in performing work covered by this contract ... are not employees of Union for any purposes whatsoever.* (emphasis added)

The contract purports to prohibit Brown's borrowed employee status. Such contract provision, however, does not automatically prevent borrowed employee status from arising. *Melancon,* 834 F.2d at 1245. The parties' actions in carrying out the contract can impliedly modify or waive the express provision. *Id.* Whether the parties had an understanding that modified the contract may raise disputed factual issues. *Id.* at 1245 n. 13; *Alday,* 750 F.2d at 378.

This court, in prior cases, has dealt with similar contract provisions. *See Melancon,* 834 F.2d at 1245 & n. 13; *West,* 765 F.2d at 528, 531; *Alday,* 750 F.2d at 377-78; *Dugas v. Pelican Construction Co.,* 481 F.2d 773 (5th Cir.1973) (discussing an identical contract provision). *But cf. Alexander v. Chevron, U.S.A.,* 806 F.2d 526, 528 (5th Cir.1986) (distinguishing *Alday* and *West* by noting that the contract provision did not *explicitly* prohibit plaintiff from becoming a borrowed employee). In *West,* a case very similar to the instant case, this court reversed the district court's summary judgment that found the plaintiff to be a borrowed employee. 765 F.2d at 531. This court, primarily concerned with the contract provision that purported to prohibit borrowed employee status, concluded that "enough conflicting evidence [had] surfaced to make summary judgment for the

defense inappropriate."  *Id.*[4]

Here, we are also concerned with conflicting evidence and a contract provision that purports to prohibit borrowed employee status.  At trial, Brown presented evidence that Union did not treat him as an employee.  For example, (1) Brown did not work alongside other Union employees;  (2) Union usually works it employees during the day while using contract workers at night;  (3) Union provides its employees, but not its contract workers, with handbooks and safety manuals;  and (4) Union uses different accident reports when contract workers are injured than when its employees are injured.  Brown presented this evidence to show that Union's conduct was consistent with the contract provision.  Union, on the other hand, asserts that the parties' actions in carrying out the contract impliedly modified the contract.  This raises a factual dispute that should be determined by a fact-finder.[5]

(4) Did the employee acquiesce?

The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them.  *Melancon,* 834 F.2d at 1246.  Brown worked, slept and ate in Union's field for a month prior to his accident.  Although many of our cases affirming borrowed servant status have involved longer periods of work,[6] one month is a sufficient amount of time for Brown to appreciate the new work conditions.

---

[4]This court raised similar concerns in *Alday.*  750 F.2d at 378.  As in *West,* the *Alday* court reversed the district court's summary judgment because the case involved disputed factual issues.  *Id.* at 379.  In *Melancon,* this court again recognized that a contract provision that purports to prohibit borrowed employee status raises factual issues.  834 F.2d at 1245 n. 13.  However, in *Melancon,* "there was a trial, albeit a nonjury trial, on the "borrowed employee' issue, and the [district court] made the finding of fact on the issue of the agreement between [the two employees]."  *Id.*  The *Melancon* court affirmed the district court's factual findings and conclusions.  *Id.* at 1246.

[5]We recognize and reiterate that the terms of a contract and the related factual issues do not automatically prevent summary judgment or direct verdict.  If the remaining borrowed employee factors overwhelmingly point to borrowed employee status, a summary judgment or direct verdict is appropriate.  *West,* 765 F.2d at 532;  *Alday,* 750 F.2d at 379;  *Gaudet,* 562 F.2d at 358;  *see also Alexander,* 806 F.2d at 528.  Here, however, the remaining eight factors do not overwhelmingly favor borrowed employee status.

[6]*See, e.g., Melancon,* 834 F.2d at 1241 (approximately 5 years);  *Alexander,* 806 F.2d at 527 (approximately 1 year);  *Gaudet,* 562 F.2d at 355 (approximately 17 years).  *But see Capps,* 784 F.2d at 616 (1 day).

(5) Did the original employer terminate its relationship with the employee?

When considering this factor, this court emphasizes "the lending employer's relationship with the employee while the borrowing occurs." *Id.* While working unsupervised on his second hitch with Union, Brown's contact with Gulf Inland was limited. On his first hitch, however, there is evidence that a Gulf Inland employee supervised Brown's work. Furthermore, Brown and another witness testified that Gulf Inland had the right to take Brown off the platform if Gulf Inland needed him elsewhere. Thus, the Gulf Inland had not relinquished all control over Brown while he was working on the Union platform. This fifth factor does not overwhelmingly favor borrowed employee status.

(6) Who furnished the tools and place for performance?

Union provided hoses, water, soap, transportation, food, and lodging.

(7) Was the new employment over a considerable length of time?

Brown worked on Union's platform for one month prior to his accident. In *Capps,* this court noted that "[w]here the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." 784 F.2d at 618. There, Capps's injury occurred on his first day of work, and this court concluded that this seventh factor was neutral. *Id.* Similarly, in the instant case, this factor is neutral.

(8) Who had the right to discharge the employee?

Although Union did not have the right to terminate Brown's employment with Gulf Inland, it had the right to terminate Brown's work relationship with Union. This arrangement is sufficient to support a finding of borrowed servant status. *Melancon,* 834 F.2d at 1246; *Capps,* 784 F.2d at 618.

(9) Who had the obligation to pay the employee?

Gulf Inland paid Brown, but his pay was based on time tickets that had to be verified daily by Union. This procedure supports borrowed employee status. *Alexander,* 806 F.2d at 528.

## III. CONCLUSION

As in *West,* the contract provision between the two employers weighs against borrowed employee status, and the remaining factors do not overwhelmingly show that Brown was a borrowed

employee. Impo rtant factual questions need to be resolved, including: (1) Who gave Brown instructions on how and when to clean the platform? (2) What was the agreement or understanding between Union and Gulf Inland regarding borrowed employee status? *See Melancon,* 834 F.2d at 1245 & n. 13. Once these important factual issues have been resolved, the district court must determine, as a matter of law, whether Brown was Union's borrowed employee. We express no opinion on the ultimate resolution of this issue at retrial.

REVERSED and REMANDED.