MONROE, Judge.
Anthony Jarrell was injured when he fell from a scaffolding while working at a dry-dock facility owned and operated by Bender Shipbuilding & Repair Company. Jarrell sued Bender, alleging that it had negligently failed to maintain or inspect the scaffolding. The trial court granted Bender’s motion for summary judgment after determining that Jarrell was Bender’s “borrowed employee” and, therefore, that Bender was immune from tort liability under 33 U.S.C. § 905(a), the exclusivity provision of the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA). Jarrell appealed; the Alabama Supreme Court deflected his appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The record reflects that on June 17, 1991, Wilks and Associates (Wilks), a Mississippi employment service, entered into an agreement with Bender, an Alabama corporation, to recruit and provide workers for Bender’s drydock operations in Alabama. The agreement stated, in pertinent part, the following:
‘Wilks & Associates expressly recognizes and agrees that all employees supplied to Bender Shipbuilding & Repair Co., Inc. by Wilks & Associates are employees of Wilks & Associates only and Wilks & Associates agrees to be responsible for compliance with all employment laws (whether federal, state, or local) applicable to such employees.”
Jarrell, a Mississippi resident, applied for employment with Wilks. Wilks determined that Jarrell met Bender’s requirements for a shipfitter’s job, and it sent Jarrell to Bender for an interview and testing. Bender found Jarrell acceptable, and Jarrell began work at Bender on July 1,1991.
Bender paid Wilks for Jarrell’s work at the rate of $10.25 per hour, plus a mark-up of 1.4% on straight time and 1.8% on overtime. Out of the mark-up, Wilks paid the Social Security and unemployment taxes attributable to Jarrell, plus general liability and workers’ compensation (including LHWCA) insurance premiums. Bender maintained Jarrell’s time records and submitted a time report to Wilks. Wilks then issued Jarrell’s paycheck and delivered it to Bender. Pursuant to an agreement between Wilks and Bender, Wilks provided Bender with a certificate of insurance showing that it had procured workers’ compensation and LHWCA coverage. The certificate reflects that Bender was an additional insured on the policy.
Five days after he began work at Bender, Jarrell was injured. He reported the injury to a Bender employee and was told by that employee to report the injury to Wilks. Wilks filed reports of the injury with both *1094 the Mississippi Workmen’s Compensation Commission and the United States Department of Labor’s Office of Workers’ Compensation Programs. Jarrell received LHWCA benefits for his injury. After settling his longshoremen’s compensation claim with Wilks’s insurer, Jarrell sued Bender in Alabama.
The issue on appeal is whether the trial court erred by holding that, as a matter of law, Jarrell was barred by the LHWCA from maintaining a negligence action against Bender. Bender argues that because Jarrell received benefits under the LHWCA federal law applies on the question whether Jarrell is a borrowed employee. Jarrell, on the other hand, maintains that Alabama law applies because the injury occurred in Alabama. The trial court determined that federal law applies; we agree. See Lott v. Moss Point Marine, Inc., 785 F.Supp. 600, 602 (S.D.Miss.1991).
In Lott, the district court determined that a worker’s receipt of benefits under the LHWCA precluded him from maintaining a tort action against the owner of a shipyard where he was injured. The court held that because the worker was “currently receiving benefits pursuant to the LHWCA ... federal law provides the rule of decision on the question of whether Lott is a borrowed employee.” 785 F.Supp. at 602. Jarrell attempts to distinguish Lott on the basis that he has already settled his compensation claim and is not currently receiving longshoremen’s benefits. That is a distinction without a difference.
The exclusivity provision of the LHWCA is not dependent upon whether the injured longshoreman is currently receiving benefits. The LHWCA, at 33 U.S.C. § 905, precludes a personal injury action against any employer who complies with the LHWCA. Just as Ala.Code 1975, § 25-5-53, provides that workers’ compensation benefits are the exclusive remedy for injuries received in a work-related accident, the LHWCA provides, in 33 U.S.C. § 905(a), that an injured worker may not maintain a tort action against his employer for any negligence of the employer giving rise to the injury; the injured worker’s exclusive remedy is under the LHWCA In International Paper Co. v. Murray, 490 So.2d 1234 (Ala.Civ.App.1985), aff'd in part, rev’d in part on other grounds, Ex parte Murray, 490 So.2d 1238 (1986), this court noted:
“The LHWCA was adopted in 1927 as a federal compensation plan for maritime workers, and was patterned after existing state workers’ compensation laws.... The LHWCA is a workmen’s compensation statute similar to our own, where employers have ‘relinquished their defenses to tort actions in exchange for limited and predictable liability.’ ”
490 So.2d at 1236 (quoting Morrison-Knudsen Constr. Co. v. Director, Office of Workers’ Compensation Programs, United States Department of Labor, 461 U.S. 624,103 S.Ct. 2045, 76 L.Ed.2d 194 (1983)).
To determine whether a person has the status of a borrowed employee, the federal courts use the following nine-factor analysis, derived from Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969):
“(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details for cooperation?
“(2) Whose work was being performed?
“(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
“(4) Did the employee acquiesce in the new work situation?
“(5) Did the original employer terminate his relationship with the employee?
“(6) Who furnished tools and place for performance?
“(7) Was the new employment over a considerable length of time?
“(8) Who had the right to discharge the employee?
“(9) Who had the obligation to pay the employee?”
Gaudet v. Exxon Corp., 562 F.2d 351, 355 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978) (restating the factors discussed in Ruiz, 413 F.2d at 312-13).
*1095 With respect to the nine-factor test, the documentary evidence submitted on the motion for summary judgment in this case shows the following:
(1) Bender had control over Jarrell and the work he was performing. Jarrell admitted that he worked under the supervision of a Bender foreman. Although Jarrell knew how to do his job, in the sense that he was an experienced shipfitter, the Bender foreman told him what to do and when to do it. This factor supports the notion that Jarrell was Bender’s borrowed employee. To paraphrase a statement of the Fifth Circuit Court of Appeals in Melancon v. Amoco Production Co., 834 F.2d 1238 (5th Cir.1988), a case that presented the same issue:
“[Bender] clearly had control over [Jarrell] and his work: [Jarrell] took orders only from [Bender] personnel who told him what work to do, and when and where to do it. [Wilks] gave no instructions to [Jar-rell] except to go to the [Bender site] and perform the work requested by [Bender] personnel. The fact that [Jarrell] had specialized [shipfitter’s] skills he utilized in most of his work ... does not bar a finding of ‘borrowed employee’ status.”
Melancon, 834 F.2d at 1245.
(2) Bender’s work was being performed. Jarrell was on Bender’s premises doing Bender’s work. Jarrell's argument that by doing Bender’s work he was also doing the work of Wilks is unpersuasive. Wilks’s business was to furnish employees to other companies, and Jarrell was not engaged in that business. See Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615, 617 (5th Cir.), cert. denied, 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986). Moreover, even if we accepted Jarrell’s argument, it would not negate borrowed employee status, because the borrowed employee concept clearly envisions that a worker may have two employers. Id.
(3) There was an agreement, understanding, or meeting of the minds between Wilks and Bender. The agreement recites that Jarrell was an “employee of Wilks & Associates only,” and it would support a finding that Jarrell was not Bender’s borrowed employee.
Analyzing a similar contract provision, the Melancon court noted that “[o]bviously parties to a contract cannot automatically prevent a legal status like ‘borrowed employee’ from arising merely by saying in a provision in their contract that it cannot arise.” 834 F.2d at 1245. Instead, the court observed, “[t]he reality at the worksite and the parties’ actions in carrying out a contract can impliedly modify, alter, or waive express contract provisions.” Id.
In a recent borrowed-employee case, the Fifth Circuit Court of Appeals observed:
‘We recognize and reiterate that the terms of a contract and the related factual issues do not automatically prevent summary judgment or directed verdict. If the remaining borrowed employee factors overwhelmingly point to borrowed employee status, a summary judgment or directed] verdict is appropriate.”
Brown v. Union Oil Co. of California, 984 F.2d 674, 678, n. 5 (5th Cir.1993) (emphasis added) (citations omitted). See also Billizon v. Conoco, Inc., 993 F.2d 104, 106 (5th Cir.1993).
(4) Jarrell may have acquiesced in the Bender work situation. Jarrell knew when he applied for employment with Wilks that he was being considered for a shipfitter’s job at Bender. He was told that he met Bender’s employment criteria and he was sent for an interview and testing at Bender’s work-site. He had reported for work at Bender for only five days before he was injured. “The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them.” Brown v. Union Oil Co. of California, 984 F.2d at 678. Although pre-injury working periods as short as one day have supported findings of employee acquiescence (see Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d at 616), we cannot unequivocally say that Jarrell acquiesced in the Bender work situation.
(5) Wilks did not terminate its relationship with Jarrell. However, this factor does not “require[] a lending employer to completely sever his relationship with the employee. Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers.” *1096 Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d at 617-18. See also Lott v. Moss Point Marine, Inc., 785 F.Supp. at 603. “The emphasis when considering this factor should focus on the lending employer’s relationship with the employee while the borrowing occurs.” Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d at 618. Wilks exercised no control over Jarrell while he worked for Bender.
(6) Who furnished tools and place for performance? The evidence is undisputed that Jarrell furnished most of his own tools. Bender contends that the others he used were supplied by Bender. The place for performance of Jarrell’s work was on Bender property.
(7) Jarrell’s employment with Bender was not over a considerable length of time. Jar-rell spent only five days working for Bender before his injury, and the record reveals that, even without the accident, he probably would have worked only three weeks for Bender. The trial court concluded that the time of employment was a “neutral” factor in the borrowed employee calculus. That conclusion is supported by federal case law on the issue. See Billizon v. Conoco, Inc., 993 F.2d at 106; and Brown v. Union Oil Co. of California, 984 F.2d at 679. However, when taken together with all the other factors, including the contract between Wilks and Bender, it weighs heavily in favor of Jarrell.
(8) Bender had the right to discharge Jarrell. Bender had the right to discharge Jar-rell from working at Bender, but it did not have the right to terminate Jarrell's employment with Wilks. This may be enough to satisfy this factor. Billizon v. Conoco, Inc., 993 F.2d at 105; Melancon v. Amoco Production Co., 834 F.2d at 1246; Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d at 618.
(9) Bender had the obligation to pay Jarrell. Bender “furnished the funds from which [Wilks] paid [Jarrell], and this is the determinative inquiry for this factor.” Melancon v. Amoco Production Co., 834 F.2d at 1246. However, it should be noted that Wilks was the one liable to Jarrell for payment for work performed, not Bender.
The question of borrowed employee status is a question of law for the trial court to determine. Billizon v. Conoco, Inc., 993 F.2d at 105. However, in some cases, factual disputes must be resolved before the court can make its legal determination. Id. See Melancon v. Amoco Production Co., 834 F.2d at 1245 n. 13.
In this case, there are disputed issues of material fact as to several of the nine elements of the borrowed employee test. Factors three and seven are clearly in Jar-rell's favor and several of the other factors raise factual issues.
The fact that factor three favors Jarrell does not automatically preclude a summary judgment under federal case law if the remaining factors overwhelmingly point to borrowed employee status. Brown v. Union Oil Co. of California, 984 F.2d at 678. However, we hold that the remaining factors do not overwhelmingly point to a borrowed employee status for Jarrell. Factor seven weighs heavily in Jarrell’s favor and, at the very least, there are factual disputes concerning several of the other factors. The trial court erred in entering the summary judgment in favor of Bender. The judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
ROBERTSON, P.J., concurs.
YATES, J., concurs in the result.
THIGPEN and CRAWLEY, JJ., dissent.