Bickett THEOPHILE

v.

TRINITY INDUSTRIES, INC. et al.

Civil Action No. 96–2181.

United States District Court,
E.D. Louisiana.

Oct. 6, 1997.

---

Russell Allen Solomon, Russell A. Solomon & Associates, Metairie, LA, William Chad Stelly, McQuaig & Stelly, Metairie, LA, for Plaintiff.

Scott Rodgers Wheaton, Jr., Stewart Foster Peck, David Boies Sharpe, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Defendants.

## ORDER AND REASONS

PORTEOUS, District Judge.

Before the Court is defendant's motion for summary judgment. Along with supporting memorandum and exhibits, defendant has also filed a reply memorandum to plaintiff's opposition brief and supporting exhibits. The Court heard oral argument on October 1, 1997.

After reviewing the parties memoranda, oral presentations, and relevant law, the court finds in favor of defendant Trinity industries, Inc. and its division Gretna Machine & Iron Works Shipyard, and therefore **GRANTS** the Motion for Summary Judgement.

## STANDARD OF REVIEW and KEY ISSUE

The Court will grant a motion for summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Not all factual disputes are necessarily material. Whether a fact is material or not is determined by the substantive law governing the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986).

This standard of review must now be applied to the main issue of whether plaintiff, who was injured while building a vessel and thus covered under the Longshore and Harbor Workers Compensation Act (LHWCA), is a "borrowed employee" of defendant Trinity Industries. If he is, then a borrowing employer of a plaintiff covered under the LHWCA is immune from tort liability. *Barrios v. Freeport–McMoran*, 1994 WL 90456 (E.D.La.) (*citing West v. Kerr–McGee Corp.*, 765 F.2d 526, 528–530 (5th Cir.1985)).

## BACKGROUND

Masse Contracting (hereinafter "Masse") is a contract labor supplier who provides local shipyards with workers. Masse will interview applicants and do background checks and then send them to a shipyard for

an interview. Seventy-five, per cent of Masse's business is with Trinity. (Deposition of Craig P. Masse, July 23, 1997, President of Masse Contracting, Defendant's Exhibit A, pg . . . 21; lines 11–13).

Plaintiff, responding to a newspaper ad called Masse looking for a job as a pipe fitter. Plaintiff never went to Masse's office. Instead the labor contracting company sent him directly to the Trinity shipyard where he was interviewed by a Trinity employee.

He used some of his own hand tools but was given all his pipe fitting and safety equipment by Trinity. As agreed between Masse and Trinity, plaintiff worked under Trinity's foremen who told plaintiff when and how long to be on the job.

Masse never exercised any direction or control over plaintiff while he was at the yard. (Masse depo. Pg . . . 12; lines 12–14). Masse did, however, did issue plaintiff his paycheck.

Trinity would pay Masse $16.50 per hour and from that Masse would pay plaintiff $10.00. The remaining balance would go to taxes, insurance, worker's compensation, operating costs, and Masse's profit. (Plaintiff's Exhibit 1, Deposition of Craig Masse, p. 10; lines 13–25). Trinity could terminate its relationship with plaintiff but could not terminate plaintiff's employment. with Masse. Trinity also, would consider, after three months, offering Masse laborers a full-time position if their performance was satisfactory. Plaintiff said in his deposition that he would consider working for Trinity if they offered him a job at the same rate he received from Masse. (Defendant's Exhibit B, Theophile Deposition, July 22, 1997, page 41; lines 16–20).

After two weeks on the job on August 25, 1995, plaintiff fractured his ribs when the A-frame hoist he was using to lower an expansion joint into the hold of a barge fell over on him.

### LAW AND ARGUMENT

Plaintiff argues that he is entitled to relief pursuant to 33 U.S.C. § 905(b) and also because Trinity is liable in tort for his injuries.

As for a cause of action under 33 U.S.C. § 905(b), plaintiff states he was injured while "working aboard a new construction barge at the Gretna Machine & Iron Works Shipyard." (Plaintiff's Opposition Memorandum, pg . . . 1, para 1). Section § 905(b), however, permits a plaintiff whose injury was "caused by the negligence of the vessel" to institute an action against the vessel as a third party. 33 U.S.C. § 905(b). Furthermore, the employer "shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b). The provision also states that:

> If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted in whole or in part or directly or indirectly, against the injured person's employer or in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer or against the employees of the employer.

33 U.S.C. § 905(b).

Since plaintiff has not named the vessel as a party and has failed to argue in his brief how this provision applies to his case, the Court therefore finds that there is no independent claim against Trinity under 33 U.S.C. § 905(b).

As for the second cause of action, if Trinity has "borrowed" a worker, such as plaintiff, who is covered by the LHWCA, the company is immune from tort liability. Whether plaintiff is a borrowed employee is an issue of law. *Capps v. N.L. Baroid–NL Industries, Inc.*, 784 F.2d 615, 617 (5th Cir.1986) (*citing Gaudet v. Exxon Corp.*, 562 F.2d 351, 357–358 (5th Cir.1977)), *cert. denied* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986). However, in some cases factual disputes must be resolved before the district court can make its determination. *Billizon v. Conoco, Inc.*, 993 F.2d 104 (5th Cir.1993).

■ Nine factors are considered when evaluating borrowed servant status:

1. Who has control over the employee and the work he is performing, beyond

mere suggestion of details or cooperation?

2. Whose work is being performed?

3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4. Did the employee acquiesce in the new work situation?

5. Did the original employer terminate his relationship with the employee?

6. Who furnished tools and place for performance?

7. Was the new employment over a considerable length of time?

8. Who had the right to discharge the employee?

9. Who had the obligation to pay the employee?

*Melancon v. Amoco Production Co.*, 834 F.2d 1238 (5th Cir.1988).

■ Answers to the first and second factor weigh heavily in favor of a borrowed employee: Trinity had clear control over plaintiff and it was in their shipyard that plaintiff worked on a barge for a Trinity customer.

Factor three will be addressed last.

As for number four, plaintiff "acquiesced" in his new work situation by showing up for work at the shipyard and never objecting to the assignment. Moreover, he acknowledged that he would consider permanent work with Trinity.

Factor five focuses on the lending employer's relationship with the employee while the borrowing is taking place. *Capps*, 784 F.2d at 617. This factor does not require a lending employer to sever completely its relationship with the employee because such a requirement would effectively render nugatory the doctrine of "borrowed employee." *Id.* Masse's control was nominal while plaintiff worked for Trinity. The only contact plaintiff had with Masse was that Masse cut his paycheck. This point, similar to the facts in *Ledet v. Quality Shipyards, Inc.*, 615 So.2d 990 (La.App. 1st Cir.1993) which also involved a labor contracting service to ship-

yards, is insufficient to defeat defendant's motion for summary judgment.

As to who has the right to discharge the employee which is the inquiry behind factor eight, this Court ruled in *Robinson v. Freeport McMoran Resource Partners*, 1995 WL 59522 (E.D.La.) that in accordance with Fifth Circuit jurisprudence the proper focus is "not whether the borrower can terminate the borrowed employee's employment with his employer, but whether the borrower has the right to terminate the borrowed employee's services with itself." *Id.* at *2 (*citing Capps*, 784 F.2d at 618). The depositions of Masse's president and plaintiff confirm that Trinity had the right to discharge plaintiff from the job site which is sufficient to satisfy factor eight.

On factor six, Trinity unquestionably furnished the tools and place for performance. Masse provided no supplies.

Factor seven is significant only where the length of employment is significant. *Capps*, 784 F.2d at 618. Plaintiff worked at Trinity *for* two weeks and from the deposition testimony of Masse's president and plaintiff there was an expectation of continued employment. This expectation weighs in favor of a borrowed employee status. *Barrios*, 1994 WL 90456 at *4.

As for factor nine, the relevant inquiry is whether the borrowing employer furnished the funds from which the lender paid the borrowed employee. *Melancon*, 834 F.2d at 1246. *See also Capps*, 784 F.2d at 618 (despite contractor providing employee's paycheck, borrowing employer paid contractor hourly wage for employee's labor). In the case at bar, Trinity paid Masse based on the number of hours plaintiff clocked on his time card and Masse made the appropriate deductions. Whether LHWCA benefits are paid by the lending employer or the borrower is not relevant to this inquiry. *Capps*, 784 F.2d at 618.

As plaintiff points out in his brief, no single point of the nine factors or combination thereof is necessarily determinative of a borrowed servant status. *Brown v. Union Oil Company of California*, 984 F.2d 674 (5th Cir.1993).

Factor three is the only one which raises a possible doubt about whether Trinity was a borrowing employer. Plaintiff argues that this status is belied by the contract between Trinity and Masse which allegedly shows that an agreement or "meeting of the minds" existed between the two firms that plaintiff was not "borrowed" by Trinity.

The "Master Service Agreement" states: "In the performance of their work, the Contractor [Masse] shall, at all time, be an independent Contractor, and the relation of the parties hereunder shall in no event be construed as constituting any other relationship." (Plaintiff's Exhibit M–3, Master Service Agreement, para 3).

This wording is similar to that found in the contract in *Barrios*. The *Barrios* Court found that a question existed about the borrowing status because the interplay of job site supervision and provision of tools between the labor supply company and it's corporate customer. *Barrios*, 1994 WL 90456 at *3–5. However, regarding the contract language which said that the labor supply company "shall be an independent contractor as to all work performed hereunder," the *Barrios* court said that this language was neutral concerning borrowed servant status and only clarified the position of the labor supply company as an independent contractor. *Barrios* 1994 WL 90456 at *3 (*citing Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 528–29 (5th Cir.1986)).

Even if Masse and Trinity had explicitly agreed that Masse employees were not employees of Trinity, a "contract cannot automatically prevent a legal status like 'borrowed employee' from arising merely by saying in a provision in their contract that it cannot arise." *Billizon*, 993 F.2d at 105 (holding that a worker provided by a labor supply contractor was a borrowed employee despite contract provision purporting to prohibit borrowed employee status due to overwhelming evidence of control by contractor's customer). This Court also ruled in *Robinson, supra*, that "language stating that an employee is an independent contractor does, not prohibit one from being a borrowed employee ..."*Robinson*, 1995 WL 59522 at *2.

As in *Billizon* and other cases cited from this circuit which found borrowed servant status based on the overwhelming evidence of control by the "borrowing employer," the affidavits and other exhibits provided by the parties before this Court show that Trinity was clearly in control of plaintiff at the job site and that plaintiff was, as a matter of law, a borrowed employee.

Accordingly,

Defendant Trinity Industries and it subsidiary, Gretna Machine & Iron Works' motion for summary judgment is hereby **GRANTED.**