CRAWLEY, Judge.
On May 14, 1998, Nancy Malone Cooks (the “worker”) was injured while working as a welder on a ship being built by Bender Shipbuilding and Repair Company, Inc. The worker was employed at the time by Yarbrough Machinery/American Industrial Marine. Yarbrough, however, had assigned her to work at Bender. The worker filed a claim for compensation under the Longshore Harbor Workers’ Compensation Act (“LHWCA”), 33 U.S.C. § 901 et seq., against Yarbrough and sued Bender and two coemployees, Winfield McClintock and Jerry Webber (hereinafter referred to collectively as the “eoemployees”), alleging negligence and wantonness; her husband, Floyd Cooks, Jr., also sued Bender, alleging a loss of consortium.
*633 Bender and the coemployees filed a joint motion for a summary judgment. Bender asserted that it was immune from tort liability pursuant to 33 U.S.C. § 905(a),[1] the exclusivity provision of the LHWCA, because, it argued, the worker was a “borrowed servant.” The coemployees asserted similar immunity under 33 U.S.C. § 933(i), which provides that compensation under the LHWCA is the exclusive remedy for injuries caused by the negligent acts of coemployees. The trial court entered a summary judgment for Bender and the coemployees on all claims. The worker appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala.Code 1975,12-2-7(6). She argues that the trial court erred by determining, as a matter of law, that she was a borrowed servant.
We review a summary judgment de novo; we apply the same standard as applied by the trial court. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c), Ala. R. Civ. P.; see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the non-movant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038. “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d). See Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999); West, 547 So.2d at 871, and Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989), for further discussion of the application of the summary-judgment standard.
This court has considered the ..application of the “borrowed-servant” doctrine before, incidentally, in a case involving Bender. See Jarrell v. Bender Shipbuilding & Repair Co., 681 So.2d 1092 (Ala.Civ.App.1996). In Jarrell, this court explained the exclusivity provision of the LHWCA:
“The LHWCA, at 33 U.S.C. § 905, precludes a personal injury action against any employer who complies with the LHWCA. Just as Ala.Code 1975, § 25-5-53, provides that workers’ compensation benefits are the exclusive remedy for injuries received in a work-related accident, the LHWCA provides, in 33 U.S.C. § 905(a), that an injured worker may not maintain a tort action against his employer for any negligence of the employer giving rise to the injury; the injured worker’s exclusive remedy is under the LHWCA. In International Paper Co. v. Murray, 490 So.2d 1234 (Ala.Civ.App.1985), aff'd in part, rev’d in part on other grounds, Ex parte Murray, 490 So.2d 1238 (1986), this court noted:
“ ‘The LHWCA was adopted in 1927 as a federal compensation plan for maritime workers, and was patterned after existing state workers’ compensation laws.... The LHWCA is a workmen’s compensation statute similar to our own, where employers have “relinquished their defenses to tort actions in exchange for limited and predictable liability.” ’
“490 So.2d at 1236 (quoting Morrison Knudsen Constr. Co. v. Director, Office *634 of Workers’ Compensation Programs, United States Department of Labor, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983)).”
Jarrell, 681 So.2d at 1094.
If the worker is not a “borrowed servant” of Bender, Bender and the coem-ployees have no tort immunity. However, if the worker is a “borrowed servant” of Bender, it, as an employer, and the coem-ployees are entitled to tort immunity under the LHWCA. To determine if a person is a “borrowed servant,” the federal courts[2] apply the following nine-factor analysis:
“(1) Who had control over the employee and the work he was performing, beyond mere suggestion of details for cooperation?
“(2) Whose work was being performed?
“(3) Was there an agreement, understanding, or meeting' of the minds between the original and the borrowing employer?
“(4) Did the employee acquiesce in the new work situation?
“(5) Did the original employer terminate his relationship with the employee?
“(6) Who furnished tools and place for performance?
“(7) Was the new employment over a considerable length of time?
“(8) Who had the right to discharge the employee?
“(9) Who had the obligation to pay the employee?”
Capps v. N.L. Baroid-NL Indus., Inc., 784 F.2d 615, 616-17 (5th Cir.1986) (citing Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969)). Although some factual issues, if disputed, may require resolution by a trier of fact, whether a person is a borrowed servant is a question of law for the court. Theophile v. Trinity Indus., Inc., 977 F.Supp. 782, 784 (E.D.La.1997).
The worker’s deposition testimony supports the trial court’s conclusion that there exist no genuine issues of material fact and that the worker is a borrowed servant as a matter of law. She testified that she was directly supervised in her work by Bender employees, not by Yar-brough personnel, and that she was performing welding for Bender on its premises. Although she testified that she brought some tools from Yarbrough, she admitted that many of the tools and the welders she used on the job at Bender were Bender’s property. She also testified that she would return to Yarbrough only to retrieve items from her locker and to pick up her paycheck. We conclude, then, that the first two, the fifth, and the sixth of the nine factors weigh heavily in favor of Bender.
The third factor, whether there was an agreement, understanding, or meeting of the minds between Yarbrough and Bender, is not clear from the record. The worker did testify that Yarbrough habitually assigned its workers to work at other shipyards besides its own. However, she stated that she did not know what, if any, agreement Bender may have with Yar-brough. Thus, we conclude that this factor is neutral.
The fourth factor, the employee’s acquiescence in the new work situation, is the factor about which there exists the most dispute. The worker testified that she complained to her supervisor at Yarbrough about her new assignment several times. However, she stated that after she was told that “she was needed at Bender’s right now” she reported for duty there *635 daily until the date of the accident. “Showing up for work” without objection at the borrowing employer’s facility has been equated with acquiescence. See Theophile, 977 F.Supp. at 785. The worker, however, did complain about her assignment at Bender. Accordingly, we conclude that the worker’s complaints were sufficient to prevent acquiescence, and we determine that this factor weighs in her favor.
Also at issue is factor seven — whether the worker’s employment at Bender was over a considerable length of time. The worker worked for Bender from April 17, 1998, to the date of the injury on May 14, 1998. The worker testified that, although she reported for duty, she was often sent home because Bender had nothing for her to do. Although she did not work for Bender for a considerable amount of time, the fact that the injury occurred early in the worker’s employment does not require us to conclude that this factor weighs in her favor. In fact, other courts have looked to whether there was an expectation of continued employment. Theophile, 977 F.Supp. at 785. The worker testified that she would work at Bender until Yar-brough instructed her to return to work at Yarbrough or to report elsewhere. Accordingly, we conclude that this factor is neutral.-
The record reveals little evidence concerning the eighth factor — which company had the right to discharge the worker. As stated above, the worker indicated that she would continue working for Bender until Yarbrough instructed her otherwise. The worker did not state that Bender could not fire her from its employ; however, neither did Bender present evidence that it could. This factor, then, weighs in the worker’s favor.
The ninth and final factor — who was obligated to pay the worker — weighs in favor of Bender. The worker testified that Yar-brough cut her paycheck but clearly stated that Bender would pay Yarbrough for her services. Bender provided an affidavit from Billy Wiik, its personnel manager, in which he stated that the worker’s pay was based on time records maintained by Bender. See Theophile, 977 F.Supp. at 785 (stating that borrowed employee was paid based on time cards maintained by the borrowing employer).
After considering the nine factors first outlined in Ruiz, we conclude that, because five of the nine factors clearly weigh in favor of Bender, two factors are neutral, and two factors weigh in favor of the worker, the trial court properly determined that the worker was a borrowed servant and properly entered a summary judgment for Bender and the coemployees.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. Section 905(a) reads in part: “The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife....” Thus, Bender is immune from suit on the derivative loss-of-consortium claim as well.

. Both parties argue the application of the test for determining “borrowed-servant” status first outlined in Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969).