**Dixie Lee HONEY, Plaintiff,**

v.

**UNITED PARCEL SERVICE, Defendant.**

**Civ. A. No. 3:94CV440LN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

March 13, 1995.

**616**

Barry W. Gilmer, Gilmer Law Firm, for plaintiff.

B. Stevens Hazard, Daniel, Coker, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant United Parcel Service (UPS) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Dixie Lee Honey has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.

This case stems from a January 2, 1994 accident on the premises of UPS in which plaintiff was injured when struck by a UPS vehicle. At the time of the accident, plaintiff was employed by Express Services, Inc. (Express), a temporary employment agency which, pursuant to an agreement with UPS to provide temporary employees for various jobs at UPS, had placed plaintiff in a job position at UPS. Following the accident, plaintiff filed a workers' compensation claim against Express, which under its contract with UPS had agreed to carry workers' com-

pensation insurance for Express employees. She also filed the present tort action against UPS, alleging that UPS's negligence proximately caused the accident and her injuries. UPS now seeks summary judgment, contending that plaintiff's claim is barred by Miss. Code Ann. § 71–3–9, the exclusivity provision of Mississippi's Workers' Compensation Act, which states in pertinent part that "[t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee.…" The plaintiff, however, maintains that UPS was not her employer for workers' compensation purposes, and that it is, instead, "any other party" within the meaning of Miss.Code Ann. § 71–3–71, which states:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death.…

The question for the court, then, is whether UPS was a statutory employer protected from suits such as this, or whether it was a third party which is subject to suit at law for plaintiff's injuries.

UPS advances two separate arguments in support of its position that it was plaintiff's statutory employer. Its first argument is premised on Miss.Code Ann. § 71–3–7, which makes "every employer to whom this chapter applies" liable for and to secure payment "to his employees of the compensation payable under its provisions," and which further mandates that a "contractor" secure the payment of workers' compensation to employees of a subcontractor unless the subcontractor has itself secured such payment. Citing several Mississippi cases holding that in accordance with this section, general or prime contractors are properly considered statutory employers of their subcontractors' employees,[1] UPS reasons that it, in effect, occupies the position of a "contractor" who, by having "secured" the payment of workers' compensation to plaintiff by requiring Express to carry workers' compensation insurance for temporary employees like the plaintiff, must be deemed a statutory employer. Though UPS's position on this point is of dubious merit, the court need not dwell on the issue since it concludes that UPS's next argument is well taken.[2]

 UPS submits that during her tenure at UPS, plaintiff was a dual employee of UPS and Express, and that consequently, under Mississippi law, both Express and UPS are immune from tort liability for her

---

**1.** *See, e.g., Doubleday v. Boyd Constr. Co.*, 418 So.2d 823 (Miss.1982) (prime contractor which required its subcontractor to carry workers' compensation insurance for its employees held to be statutory employer of subcontractor's employees; thus, general contractor could not be sued as third party in common law negligence action by subcontractor's employee); *Mosley v. Jones*, 80 So.2d 819 (1955) (general contractor which secured workers' compensation coverage for employees of subcontractor which failed to provide such coverage not a "third party" subject to common law suit but rather a statutory employer protected by exclusivity bar of compensation act). But see footnote 2 and cases cited therein.

**2.** The court's view as to the lack of merit in UPS's position derives from such cases as *Falls v. Mississippi Power & Light Co.*, 477 So.2d 254 (Miss.1985). In *Falls*, the Mississippi Supreme Court rejected Mississippi Power & Light's argument that it was a statutory employer entitled to protection from tort liability for the job-related death of an independent contractor's employee since it had contractually required that independent contractor to carry worker's compensation coverage for the decedent. The court explained

that under § 71–3–7, the statute upon which UPS's argument is based, a company is only liable to secure workers' compensation covering a worker if the company qualifies as a prime contractor. *Id.* at 256. The statute does not apply simply because an owner or principal requires an independent contractor to secure workers' compensation insurance; rather, the statute is limited to owners or principals who actually qualify as a general or prime contractors, and they do not qualify just because they may contract a portion of their work to others. *Id.* at 257. And while no statute or case has defined the terms "contractor" and "subcontractor" as used in this statute, it is apparent that in this case, UPS would not qualify as a "prime" or "general" contractor. *See Nash v. Damson Oil Corp.*, 480 So.2d 1095 (Miss.1985) (one who is a "contractor" in the "generic sense" but who "lies outside the general understanding of such terms as 'prime contractor' or 'general contractor,'" is "not the sort of 'contractor' within the meaning and contemplation of Section 71–3–7.").

injury.[3] Mississippi has long embraced the concept of "dual employment," *see Biggart v. Texas Eastern Transmission Corp.,* 235 So.2d 443 (Miss.1970) ("[a]n employee may be employed by more than one employer while doing the same work"); thus, "'when an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has actually provided workmen's compensation insurance.'" *Ray v. Babcock & Wilcox Co., Inc.,* 388 So.2d 166, 167 (Miss.1980) (quoting *Robertson v. Stroup,* 254 Miss. 118, 180 So.2d 617 (1965)). Closely related to this concept of dual employment is the doctrine of the "borrowed servant," which recognizes that "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence of a third person, so that he becomes the servant of that person with all legal consequences of the new relation." *Standard Oil v. Anderson,* 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909) (quoted in *Gaudet v. Exxon Corp.,* 562 F.2d 351, 356 (5th Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978)); *see also Lott v. Moss Point Marine, Inc.,* 785 F.Supp. 600, 602 (S.D.Miss.1991). Though the borrowed servant concept was initially established as a means for holding the borrowing employer vicariously liable under *respondeat superior* for the negligence of the borrowed employee, *see Standard Oil,* 212 U.S. 215, 29 S.Ct. 252, its application expanded into the field of workers' compensation, where it is now generally accepted. V.S. Dunn, *Mississippi Workmen's Compensation,* § 186 (3d ed. 1990) ("the 'loaned servant' doctrine is generally considered applicable in the compensation field"). Though there have been no Mississippi cases purporting to apply this doctrine in a workers' compensation context, the court has no doubt that the Mississippi court would do so if presented with the opportunity.

In determining whether a borrowed servant relationship exists, the Mississippi Supreme Court uses the factors identified by the Fifth Circuit in *Ruiz v. Shell Oil Co.,* 413 F.2d 310, 312–13 (5th Cir.1969). *See Texaco, Inc. v. Addison,* 613 So.2d 1193, 1201 (Miss. 1993) (adopting *Ruiz* factors). These are:

(1) Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

(9) Who had the obligation to pay the employee?

In *Capps v. N.L. Baroid–NL Industries, Inc.,* 784 F.2d 615 (5th Cir.), *cert. denied,* 479 U.S. 838, 107 S.Ct. 141, 93 L.Ed.2d 83 (1986), the Fifth Circuit, in the context of a claim under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901–950, concluded upon application of these factors that an employee furnished by a company that "specializ[ed] in the supplying of general laborers to companies in need of temporary help" became the borrowed servant of the company to which the employee's services were provided. *Id.* at 616. The court thus concluded that the exclusivity bar of the LHWCA, the terms of which are identical to the exclusive remedy provision of Mississippi's workers' compensation act, precluded the employee's tort suit against the borrowing employer. The court's observations in *Capps* are highly instructive, and lead the court to conclude that Honey, like

---

**3.** The court notes that while plaintiff submitted a brief in opposition to UPS's motion, her response was directed solely to UPS's argument based on Miss.Code Ann. § 71–3–7. She did not address, or even so much as acknowledge UPS's additional argument.

the employee in *Capps*, was a borrowed servant of UPS.[4]

"The first, and most important factor is: Who has control over the employee and the work [s]he is performing, beyond mere suggestion of details or cooperation?" *Capps*, 784 F.2d at 617; *see also Texaco, Inc. v. Addison*, 613 So.2d 1193, 1201 (Miss.1993) (citing *Ruiz* and *Capps* ) ("the first factor is weighed most heavily in determining whether an employee is a borrowed servant"). Based on the evidence of record, it is plain that UPS controlled plaintiff in the performance of her work.

The proof shows that a contractual arrangement existed between UPS and Express pursuant to which Express agreed to supply temporary employees for various jobs at UPS when UPS required the services of such employees. When UPS needed the services of an Express employee, it communicated this need to Express by sending a job assignment order identifying the job hours, duration of the job, job description and a start date. Upon receiving the request, Express would assign an employee to the position.

In the case of Honey, Express made the initial selection of her as the employee to fill the subject position at UPS and communicated with her concerning the job. However, the record discloses that other than telling the plaintiff in general terms what her duties would be while at UPS, and advising her of the initial hours of work and to whom she was to report at UPS, no one with Express gave plaintiff any explicit direction; no on-site supervision was provided by Express, nor did Express have any direct input into or control over the plaintiff's day-to-day duties or the performance on the job. Plaintiff did indicate in her deposition testimony that she stayed in contact with her Express supervisor, calling her sometimes as often as once or twice a week. However, she explained that her purpose in doing this was "to let them know how things were going on the job and what they (UPS) thought of [her] work and

so forth so [she] could kind of keep them (Express) abreast of how things were going on the job."

As in *Capps*, the second inquiry, which asks whose work is being performed, can be answered directly: "All of the work [Honey] performed furthered [UPS's] business. In fact, [Express'] business existed solely to furnish employees to other companies so that the employees could perform the work of the borrowing employer." *Id.*

There was an agreement or understanding between the original employer, Express, and the borrowing employer, UPS, concerning the plaintiff's services. They had an explicit agreement by which Express provided UPS with temporary employees when UPS's business required them and a request was made. *Cf. Capps*, 784 F.2d at 617 (though no written agreement, lending and borrowing employers had understanding that lending employer would furnish employees when requested by borrowing employer). The third factor, then, supports a finding that Honey was a borrowed employee.

The fourth factor is also met, in that Honey "acquiesced in the new work situation." In the words of the *Capps* court:

> Since [Honey] worked for a company that loaned temporary employees, [she] knew [Express] would send [her] into new work situations. Thus, going into new work situations was [Honey's] work situation. When [she] went to work for [Express], [she] acquiesced to the fact that [Express] would constantly send [her] into new work situations.

*Id.* at 617. And, as in *Capps*, "[t]he fifth factor—Did the original employer terminate his relationship with the employee?—also weighs in favor of [finding that Honey was a borrowed servant]." In *Capps*, the court explained that this factor does not require

> a lending employer to completely sever his relationship with the employee. Such a requirement would effectively eliminate the borrowed employee doctrine as there could never be two employers. The em-

---

4. Whether an employee is a borrowed servant is a question of law for the court to decide. *Capps v. N.L. Baroid Indus., Inc.*, 784 F.2d 615, 617 (5th Cir.1986) (district court decides issue as a matter of law and "if sufficient basic factual ingredients are undisputed, the court may grant summary judgment"); *Lott v. Moss Point Marine, Inc.*, 785 F.Supp. 600, 602 (S.D.Miss.1991).

phasis when considering this factor should focus on the lending employer's relationship with the employee while the borrowing occurs. In the instant case, [Express] exercised no control over [Honey] while [she] worked for [UPS] and placed no restrictions on [UPS] with respect to [Honey's] employment conditions. Thus, while [Honey] worked for [UPS], [Express] had temporarily terminated its relationship with [her].

*Id.*

The sixth question asks who furnished tools and place for performance. Obviously, UPS furnished the place for performance. And while the agreement between UPS and Express recited that Express would supply all "labor, supervision, materials, supplies, equipment, transportation, tools, permits and services for the work to be performed," it is apparent that this was not the way the parties' arrangement worked in fact. Rather, while Express did provide Honey's labor, UPS provided all the equipment, supplies and materials necessary for Honey's performance of her job.

The next factor asks whether the employment was over a considerable length of time. In the job order for the position filled by plaintiff, UPS requested someone to fill a clerical slot commencing November 8, 1993 and to last for an "indefinite" duration, which, according to the testimony of Dan Gunderson, Express' representative, meant that the job could last "anywhere from a day to a year." [5] In *Capps,* the Fifth Circuit explained that this factor is "significant only when the special employer employs the employee for a considerable length of time. In the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true." *Id.* at 618. In the latter case, "the factor provides a neutral assessment...." *Id.* Here, then, the factor "provides a neutral assessment."

The eighth factor inquires: Who has the right to discharge the employee? It is undisputed that UPS had the right to discharge Honey from her employment at UPS, but it did not have authority to terminate her employment with Express. However, in considering who has the right to discharge the employee, the "proper focus," according to the *Capps* court, is on whether the borrowing employer had the right to terminate the employee's services with itself, and not on whether it had the right to discharge the employee. And, "[s]ince [UPS] had the right to discharge [Honey] from [her] association with [UPS]," this factor also supports a finding that she was UPS's borrowed servant.

The focus of the final factor is on who had the obligation to pay the employee. Here, as was the case in *Capps,* "[w]hile [Express] had the obligation to pay [Honey], [Express] received the funds to pay [Honey] from [UPS]. Since [UPS] paid [Express] at an hourly rate for [Honey's] work, and then [Express] paid [Honey] at a lower hourly rate, then [UPS] in essence paid [Honey]." *Id.* Consequently, the last factor does not detract from the conclusion that Honey was a borrowed employee. *Id.*[6] *See also* 1B A. Larson, *Workmen's Compensation Law* § 48.23 (1994) (employer obtaining workers from labor service such as Manpower, Inc. is statutory employer with liability for workers' compensation and immunity from common law liability).

A similar conclusion was reached by the court in *Lott v. Moss Point Marine, Inc.,* 785 F.Supp. 600 (S.D.Miss.1991). There, as in *Capps,* the court determined that the LHWCA's exclusivity provision barred a tort action by an injured worker against his borrowing employer. In accordance with an arrangement similar to that involved in the case at bar, the lending employer, CESI, provided Lott's, the employee's, services pursuant to a contract to provide industrial labor personnel to the borrowing employer, MPM,

5. The plaintiff was also asked about her understanding of how long the job was to last. On this topic, she explained that when she was first told of the position by Express, she was advised that "it may last until the first of the year," but "once [she] got there ... the [UPS] supervisor advised [her] it would be indefinite...."

6. It is also of note that under the arrangement between UPS and Express, while Express was contractually required to maintain worker's compensation insurance for its employees, the cost for that coverage was ultimately passed on to UPS.

at its shipyard. Although Lott was an employee of CESI, he was furnished to work under MPM's direct supervision and CESI did not provide anyone to supervise Lott while at MPM's place of business. Applying the *Ruiz* factors, the court concluded that even though Lott remained under some control of CESI, he was MPM's borrowed servant and thus precluded from maintaining a common law tort action against MPM. *Id.* at 603. The court indicated, alternatively, that "even if Mississippi law were the controlling precedent," Lott's claim still would be barred under Mississippi's "dual employment" doctrine since Lott was "subject to the control of both MPM and CESI." *Id.* at 604.

Likewise, in the case at bar, whether the court applies Mississippi's traditional dual employment doctrine or the borrowed servant doctrine, which this court believes would be adopted and applied by the Mississippi Supreme Court to cases involving workers' compensation, the conclusion is the same. UPS was Honey's statutory employer and is therefore immune from tort liability for her on-the-job injury. Therefore, it is ordered that UPS's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.