BRIDGES, C.J.,
for the Court:
¶ 1. Katherine Laws Colbert appeals this action from a grant of summary judgment in favor of Mississippi Marine Corporation. The Washington County Circuit Court found as a matter of law that Darnell Jerome Laws was a borrowed employee of MMC and Colbert’s exclusive remedy against MMC for Laws’s death was under the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. We conclude there is no genuine issue of material fact in dispute regarding the employment status of Laws. Accordingly, the grant of summary judgment by the Washington County Circuit Court is affirmed.
FACTS
¶ 2. The decedent, Darnell Jerome Laws (Laws), was employed as a general laborer by Kentucky Marine Corporation (KMC) at minimum wage on or about November 8, 1994. His services were furnished to Mississippi Marine Corporation (MMC) pursuant to a contract in effect between MMC and KMC whereby KMC would furnish laborers to MMC to work for MMC on an as-needed basis at MMC’s job site in the Harbor Front Industrial Park in Greenville. In return, MMC would pay KMC a flat hourly rate of $16 for straight time labor and $22 for overtime labor.[1]
¶ 3. On November 14, 1994, KMC employees Laws, Elliott Carlisle and Demetrius Watson were assigned as general laborers to work temporarily at the MMC job site. In the early afternoon, Laws and Watson approached- KMC’s paint foreman on the MMC site, Lee Harper, inquiring whether Harper and Watson needed assistance. Harper described the sequence of events leading to the accident in his deposition:
I was carrying some scaffolding. They [Watson and Laws] had done finished doing what they was doing and I was toting scaffolding and stuff and they asked me did I need any help, and I told them yes.... [Laws] just asked me did I need any help, and I said, ‘Well, since y’all ain’t got nothing to do, y’all can help me get the scaffold set up.”... After we set the scaffold up[, w]e just started toting all the pieces of the scaffolds from one end to the other one where we was — where I was working at on James 55.... Then we started scrubbing the building on the barge, the *1119 back side of the building. We was using water and a scrub broom.
¶ 4. At the time of the accident, Harper was supervising Laws, Carlisle and Watson, instructing them how to scrub the MMC supply and office building to prepare it for painting. It was necessary for the men to stand on an inverted barge (JAMES 55) owned by MMC and used as a work platform to perform the work. While scrubbing the building, Laws accidentally fell from the work platform into Lake Ferguson and drowned.
¶ 5. According to the contract between KMC and MMC, Laws was provided protection under KMC’s workers’ compensation insurance policy through Liberty Mutual Insurance Company for accidental injuries or death occurring at the MMC job site while Laws was working as a leased general laborer for MMC. At the time of the accident, MMC had workers’ compensation coverage for its employees through United States Fidelity & Guaranty Company.
¶ 6. On December 8, 1994, Katherine Laws Colbert (Colbert) filed an action for the wrongful death of her son, Darnell Jerome Laws, in the United States District Court for the Northern District of Mississippi, Greenville Division seeking damages from Kentucky Marine Corporation and Mississippi Marine Corporation under the Jones Act, 46 U.S.CApp. § 688; the Mississippi wrongful death statute, Miss.Code Ann. § 11-7-13; and the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. The federal lawsuit was dismissed for reasons not cited in the record.
¶ 7. The present action was filed against KMC and MMC in the Washington County Circuit Court on August 2, 1995. Colbert sought damages from KMC under the Mississippi wrongful death statute alleging KMC’s failure to use reasonable care in the employment, guidance and control of Laws proximately caused his death, and under LHWCA, 33 U.S.C. § 906, seeking recovery of survivor death benefits. Colbert sought damages from MMC under the wrongful death statute alleging MMC’s failure to use reasonable care in maintaining its premises proximately caused Laws’s death, and under LHWCA, 33 U.S.C. § 905(b), alleging vessel negligence.
¶ 8. KMC and MMC filed motions to dismiss for lack of subject matter jurisdiction under M.R.C.P. 12(b)(1) contending that Colbert’s exclusive remedy against KMC and/or MMC was under the LHWCA By order dated February 20, 1997, the circuit court sustained KMC’s motion for lack of subject matter jurisdiction finding (1) Laws was a maritime employee, (2) Laws was employed by KMC, a maritime employer, and (3) Laws was injured on navigable waters. Therefore, Colbert’s exclusive remedy against KMC for Laws’s death was under LHWCA.[2]
¶ 9. The circuit court reserved making a decision on MMC’s motion to dismiss re *1120 questing additional briefing and argument from the parties on whether Laws was a borrowed employee of MMC. After considering additional discovery and briefs, the circuit court granted MMC’s motion to dismiss on October 31, 1997, finding Laws was a borrowed employee of MMC, and Colbert’s action against MMC was barred by the exclusivity provision of LHWCA.
¶ 10. Aggrieved with the court’s October 31, 1997 order dismissing the action as to MMC, Colbert perfected this appeal assigning as error (1) the lower court’s finding that Darnell Laws was a borrowed servant of MMC at the time of his death; (2) the lower court’s granting KMC and MMC judgment as a matter of law; and (3) the lower court’s finding that MMC is shielded from tort liability under the Longshore and Harbor Workers’ Compensation Act in light of the contract between KMC and MMC which provided that MMC was an “owner.”
ARGUMENT AND DISCUSSION OF LAW
¶ 11. In reaching its decision on the motions to dismiss filed by KMC and MMC, the circuit court considered matters outside the record thereby effectively changing the 12(b)(1) motions into summary judgment motions under M.R.C.P. 56. As an appellate court, we conduct a de novo review of the trial court’s granting of a summary judgment analyzing all eviden-tiary matters in the record in the light most favorable to the nonmoving party. Jones v. James Reeves Contractors, Inc., 701 So.2d 774, 777 (Miss.1997). This Court may reverse the trial court’s decision to grant summary judgment if a legal issue was incorrectly decided or if material facts are in dispute. Clark v. St. Dominic-Jackson Mem’l Hosp., 660 So.2d 970, 972 (Miss.1995); Radmann v. Truck Ins. Exchange, 660 So.2d 975, 977 (Miss.1995). The party moving for summary judgment bears the burden of persuading the court that no genuine issue of material fact exists, and that it is, based on the established facts, entitled to judgment as a matter of law. Burton v. Choctaw County, 730 So.2d 1 (¶ 11) (Miss.1997). In this light, we examine the granting of summary judgment to MMC.
I. WHETHER THE TRIAL COURT •ERRED IN FINDING AS A MATTER OF LAW THAT LAWS WAS A BORROWED EMPLOYEE OF MMC.
¶ 12. The borrowed employee doctrine was first recognized as shielding a borrowing employer from tort liability for work-related injuries sustained by a leased employee under §§ 904 and 905 of the Longshore and Harbor Workers’ Compensation Act in Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969). Section 904 provides that “[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under [33 USCS §§ 907, 908, and 909].” The exclusivity provision is found in Section 905(a):
The liability of an employer prescribed in [33 USCS § 904] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death....
The determination that MMC was Laws’s borrowing employer at the time of his death would shield MMC from common law tort liability as an employer for purposes of the LHWCA. Whether Laws was a borrowed employee for workers’ compensation purposes is a matter of law for the court to decide applying Mississippi law.[3] Lott v. Moss Point Marine, Inc., 785 F.Supp. 600, 602 (S.D.Miss.1991).
¶ 13. The supreme court in Jones v. James Reeves Contractors, Inc., 701 So.2d *1121 774 (Miss.1997), condensed the “multi-factored test” in Kisner v. Jackson, 159 Miss. 424, 428-29, 132 So. 90, 91 (1931),[4] to three important factors to be considered in analyzing whether an employee is a borrowed employee for workers’ compensation purposes: (1) whose work is being performed, (2) who has the right to control worker and his duties on job, and (3) the existence of an actual or implied employment contract between the employee and borrowing employer. Jones, 701 So.2d at 778. Applying each of these factors to the case sub judice, we find Laws was a borrowed employee of MMC.
(1) Whose work was being performed?
¶ 14. The uncontroverted facts are that the decedent, Darnell Jerome Laws, was employed as a laborer by KMC on or about November 8, 1994. On November 14, 1994, Laws was preparing for painting a building that would be used by MMC for offices and supplies. Laws was working as a general laborer for MMC at MMC’s job site pursuant to the KMC-MMC contract. According to Harper, KMC employees were leased by MMC because the MMC employees who normally would have done the work were busy on other projects. To scrub the building, Laws was required to stand on an inverted barge used as a work platform. The inverted barge was owned by MMC. Harper testified MMC furnished all the cleaning supplies and equipment needed to do the job. On occasion, Harper would use KMC’s paint gun and air line to paint for MMC; however, Harper testified he did not use any KMC equipment at the MMC site on November 14.
¶ 15. Colbert asserts the daily labor sheet for November 14 indicates that Laws was performing KMC work and not work for MMC. A review of the daily labor sheet shows Lee Harper completed the KMC daily labor distribution sheet showing 21/6 direct labor hours (Lee Harper, 10/6; Carl-tie, Elliott (sic), 10; Darnell Laws,/¿; and Demetrius Watson,)é) were charged to Job No. 4160 for work on the MMC supply/office building. Non-direct labor hours shown on the same daily labor sheet indicate that a total of nine hours (4fé hours for Laws and 4)4 hours for Watson) were to go “into KMC job cost not MMC job cost.” The grand total hours shown for November 14, 1994 for Group No. 12, day shift was 30/6 hours. KMC billed MMC for the 21]6 hours charged to Job No. 4160, and MMC paid KMC pursuant to the contract. According to Harper, Laws had been assisting another foreman during the morning of November 14 and had offered to assist Harper after lunch. Laws had worked scrubbing the building for approximately thirty minutes before he fell into Lake Ferguson. Thus the one-half hour charged to Job No. 4160 would be for the time Laws performed MMC’s work before the accident.
(2) Who had the right to control Laws and the duties he performed?
¶ 16. Colbert asserts Laws was at all times under the control of KMC. We do not agree.
*1122 ¶ 17. KMC hired Laws as a general laborer at $5 an hour on November 8, 1994. KMC had all the normal obligations and duties of the employer-employee relationship. KMC’s personnel safety manager, Wanda Towey, instructed Laws regarding safety and equipment requirements. Although Laws was employed by KMC only six days before his death and had not yet received a paycheck, KMC was responsible for paying Laws. KMC had workers’ compensation coverage for its employees, including Laws, as required by the LHWCA through Liberty Mutual Insurance Company. Further, the KMC-MMC contract specifically states the workers’ compensation coverage through KMC’s insurer Liberty Mutual Insurance Company would protect KMC employees leased by MMC if injured while performing work for MMC.
¶ 18. At the time of his death, Laws was a loaned or borrowed employee of MMC. Laws was assigned by KMC to work with MMC temporarily as a general laborer. Pursuant to the contract between KMC and MMC, KMC furnished workers to MMC at MMC’s job site in the Harbor Front Industrial Park in Greenville on an as-needed basis for a flat hourly rate for each temporary employee of $16 for straight time and $20 for overtime. Such charges would, in effect, reimburse KMC for the worker’s hourly wage, workers’ compensation premiums, unemployment compensation taxes, social security taxes, withholding taxes for state and federal income, and other overhead costs.
¶ 19. According to Nichols’s affidavit, from time to time MMC would terminate a worker leased from KMC who did not meet the requirements of MMC, sending the worker back to KMC. Therefore, MMC had the authority to discharge Harper or Laws from his temporary employment with MMC; however, MMC could not terminate either employee from his employment with KMC. This type situation has been deemed adequate to satisfy the requirements of borrowed employee status. Billizon v. Conoco, Inc., 993 F.2d 104, 105 (5th Cir.1993); Melancon v. Amoco Production Co., 834 F.2d 1238, 1246 (5th Cir.1988); Capps v. N.L. Baroid-NL Industries, Inc., 784 F.2d 615, 618 (5th Cir.1986).
¶ 20. Turning to the question of who had control of what duties Laws would perform as a leased general laborer, we find that MMC controlled the work to be done by KMC employees leased by MMC. According to Nichols, Tommy McKinnon, vice president of operations at Mississippi Marine Corporation, would tell KMC vice-president Jeffery Nightingale when temporary employees were needed for what work at the MMC job site. Nightingale would assign KMC employees to perform the work. Following this procedure, MMC requested KMC assistance in the paint-related work necessary to set up MMC’s supply and office building. On the day in question, Harper testified Nightingale instructed him as paint foreman to “go to Mississippi Marine’s facility and prepare the buildings that was on the barge that had been turned upside down for painting, and once he got it prepared, to paint it.” Once Harper arrived at the MMC job site, he had an MMC supervisor:
Q. Was there anyone there from Mississippi Marine Corporation to supervise you?
A. Yeah. It was some more foremans [sic] on the yard, you know.
Q. Well, I mean—
A. Like Don Ray, he was there but—
Q. Where was Mr. Ray?
A. Mr. Ray? Oh, he’s on the front side.
¶ 21. A comparable chain of command existed in Texaco v. Addison, 613 So.2d 1193 (Miss.1993). There Duplantis was a Texaco employee who was responsible for the overall Texaco project. Duplantis supervised McRaney, a Gulf Coast Contracting Services, Inc. employee leased by Texaco, who gave orders directly to the Addison, a roustabout also leased from Gulf Coast. The supreme court found *1123 Addison was controlled sufficiently by Texaco to be a borrowed employee.
¶ 22. In the present case, Don Ray, MMC’s repair operations manager, was the supervisor of all foremen at the MMC facility, including Lee Harper. Harper gave orders directly to Laws. Thus, MMC was in control of both Harper and Laws while they were working at the MMC facility.
¶ 23. Colbert’s argument that Laws was at all times under the control of KMC because Laws’s immediate supervisor Harper had no MMC supervisor who controlled or directed the manner or method of work performed by Harper is without merit. The lack of close supervision of a skilled worker is of no consequence in determining whether an injured worker was a borrowed employee. Melancon, 834 F.2d at 1246; Huff v. Marine Tank Testing Corp., 631 F.2d 1140, 1143 (4th Cir.1980). Harper had worked at MMC numerous times. Harper knew enough about the work he was doing for MMC that he did not need direct supervision or close supervision by Ray. It was not necessary for Ray to direct the manner or method of Harper’s work. Nichols testified that if Harper had a problem or needed anything his immediate supervisor was Ray.
(3) Did an actual or implied employment contract exist between Laws and Mississippi Marine Corporation?
¶ 24. Colbert contends that because Laws was hired directly by KMC and reported to KMC employee Harper, MMC cannot show that Laws acquiesced to the control of MMC. The record shows KMC had an agreement with MMC whereby KMC periodically would provide laborers to MMC. Laws was employed by KMC on November 8 knowing he would be assigned as a general laborer to work for MMC at its job site on an as-needed basis. Laws was at all times assigned to MMC as a laborer performing his duties at the MMC job site which was two or three miles from the premises of KMC.
¶25. In Capps, 784 F.2d at 618, the Fifth Circuit found that Capps acquiesced to being sent to new work situations when he accepted employment with a company that loaned temporary employees. Although Capps had been on the job with the borrowing employer for only one day, he was a borrowed employee for workers’ compensation purposes.
¶ 26. Finding the Fifth Circuit’s analysis in Capps “highly instructive,” the United States District Court in Honey v. United Parcel Service, 879 F.Supp. 615, 618 (S.D.Miss.1995), concluded that the injured worker acquiesced in being a leased employee and thus was a borrowed servant precluded from suing the borrowing employer in tort:
In Capps ..., the Fifth Circuit, in the context of a claim under the Longshore and Harbor Workers’ Compensation Act (LHWCA) 33 U.S.C. § 901-950, concluded upon application of these factors that an employee furnished by a company that “specializ[ed] in the supplying of general laborers to companies in need of temporary help” became the borrowed servant of the company to which the employee’s services were provided. The court thus concluded that the exclusivity bar of the LHWCA, the terms of which are identical to the exclusive remedy provision of Mississippi’s workers’ compensation act, precluded the employee’s tort suit against the borrowing employer. The court’s observations in Capps are highly instructive, and lead the court to conclude that Honey, like the employee in Capps, was a borrowed servant of UPS.
¶ 27. The concept of dual employment and the doctrine of borrowed servant have long been accepted by Mississippi as the court recognized in Honey:
Mississippi has long embraced the concept of “dual employment”; thus, “ ‘when an employee is engaged in the service of two (2) employers in relation to the same act (dual employment), both employers are exempt from common law liability, although only one of them has *1124 actually provided workmen’s compensation insurance.’ ” ... Closely related to this concept of dual employment is the doctrine of the “borrowed servant,” which recognizes that “[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence of a third person, so that he becomes the servant of that person with all legal consequences of the new relation.”
Id. at 617 (citations omitted).
¶ 28. In Northern Elec. Co. v. Phillips, 660 So.2d 1278 (Miss.1995), the Mississippi Supreme Court held that a leased employee’s exclusive remedy against the borrowing entity was workers’ compensation benefits provided under the temporary employment agency’s workers’ compensation coverage. Although the borrowing employer filed its summary judgment motion untimely, the court stated:
Summary judgment is appropriate where a temporary employment agency assigns an employee to another employer and the employee performs the normal work of the second employer and is controlled and supervised by that employer. In Mississippi, one may be employed by more than one employer and both employers gain immunity from common-law negligence actions. Here pursuant to the Mississippi Workers’ Compensation Act, Phillips’ exclusive remedy was workers’ compensation benefits.
Id. at 1282.
¶ 29. We conclude Laws was a borrowed employee of MMC. As required by § 904 of the Longshore and Harbor Workers’ Compensation Act, MMC secured workers’ compensation coverage for its employees through United States Fidelity & Guaranty Company. Further, KMC acquired workers’ compensation coverage for its employees, including Laws, through Liberty Mutual Insurance Company. By the terms of its contract with MMC, KMC’s workers’ compensation insurance policy with Liberty Mutual Insurance Company would cover any accidental injuries or death of any KMC employee occurring while the KMC employee was working as a temporary laborer for MMC. Thus, Colbert’s exclusive remedy for the death of Laws is under the LHWCA.
II. WHETHER MMC’S DESIGNATION AS “OWNER” IN ITS CONTRACT WITH KMC REMOVED
MMC’S TORT LIABILITY IMMUNITY UNDER LHWCA
¶ 30. Colbert contends that because MMC is designated as “owner” -in the contract between KMC and MMC, MMC is neither a contractor nor a subcontractor. Thus, Colbert argues, the tort immunity under 33 U.S.C. § 905(a) is unavailable to MMC. We disagree.
¶ 31. In Total Marine Services, Inc. v. Director, 87 F.3d 774, 776 (5th Cir.1996), the Fifth Circuit affirmed a ruling of the Benefits Review Board which held that a company determined to be a worker’s borrowing employer “is liable for that worker’s compensation benefits as that worker’s ‘employer’ under § 904(a) notwithstanding that the company is not a contractor whose ‘subcontractor failfed] to secure the payment of compensation’ under the second sentence of § 904(a).” The court reasoned that Total Marine, as the injured worker’s borrowing employer, was as a matter of law the employer in accordance with the first sentence of § 904(a) and the second .sentence of § 904(a) did not apply because that sentence applied only to those employers who are subcontractors and Total Marine was the “employer,” not a subcontractor. Id. at 779.
¶ 32. Likewise, MMC, as a borrowing employer, was Laws’s employer under § 904(a), regardless of the second sentence, and therefore, is entitled to the exclusivity provision of that section. MMC’s status as a “borrowing employer” is not precluded by the terms used in the contract between KMC and MMC.
CONCLUSION
¶ 33. After a thorough review of the record, we find there is no genuine issue of *1125 material fact regarding Laws’s status as a borrowed employee of MMC. Under Mississippi law, MMC, as a borrowing employer, is immune from tort liability inasmuch as MMC had in effect at the time of the accident workers’ compensation coverage on its employees as required by the LHWCA, and, pursuant to the contract in effect between KMC and MMC, KMC’s workers’ compensation coverage in effect at the time of the accident would cover any injuries sustained by KMC’s employees loaned to MMC. Thus, the exclusive remedy available to Laws’s survivors against MMC is under the LHWCA. We affirm the granting of the summary judgment in favor of Mississippi Marine Corporation.
¶ 34. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ„ CONCUR.

. The September 14, 1992 contract shows the flat rate for straight time labor was $15 per hour and overtime labor was $20 per hour. According to the testimony of D. John Nichols, an officer and shareholder in both KMC and MMC, the hourly rates had been renegotiated between the parties and on November 14, 1994, the flat rate was $16 and $22, respectively.

. Colbert appealed from the circuit court’s October 31, 1997 order granting Mississippi Marine Corporation's motion to dismiss only. However, in her briefs she requests this Court reverse the order dismissing her complaint against MMC and KMC as a matter of law without assigning any error in the lower court’s granting of summary judgment to KMC.
The lower court found the sole remedy available to Laws’s survivors for his death against KMC is under the LHWCA, inasmuch as KMC employed Laws in maritime employment, in whole or in part, and KMC had obtained workers' compensation coverage as required under LHWCA. 33 U.S.C. § 902(4) and § 905(a). If KMC had failed to secure coverage, Colbert would have been allowed to elect whether to claim compensation under the LHWCA or pursue an action at law or admiralty for damages on account of Laws’s death. § 905(a). In the present case, KMC acquired longshoremen and harbor workers' compensation coverage through Liberty Mutual Insurance Company. Such coverage was in effect on November 14, 1994, the date of the accident. Therefore, Colbert's exclusive remedy against KMC for Laws’s death was through the LHWCA. The lower court’s decision granting summary judgment in favor of Kentucky Marine Corporation is affirmed.

. The action in Lott was removed to federal court on the basis of diversity of citizenship. The contracting entity based its borrowed servant argument upon the fact that Lott was receiving benefits pursuant to the LHWCA. Therefore, the court determined that federal law provided the rule of decision on the question of whether Lott was a borrowed employ *1121 ee. Lott, 785 F.Supp. at 602. In the present state action, Laws's survivors have received no benefits under the LHWCA. We conclude that Mississippi law controls the question of Laws's employment status at the time of his death.

. The Kisner factors included:
whether the principal/master has the power to terminate the contract at will; whether he has the power to fix the price in payment for the work; whether he vitally controls the manner and time for payment; whether he furnishes the means and appliances for the work; whether he has control of the premises; whether he furnishes the materials upon which the work is done and receives the output, the contractor dealing with no other person with respect to output; whether he has the right to prescribe and furnish details of the kind and character of work to be done; whether he has the right to supervise and inspect the work during the course of the employment; whether he has the right to direct the details of the manner in which the work is to be done; whether he has the right to employ or discharge the subemployees and fix their compensation; whether he is obliged to pay the wages of said employees.
Jones, 701 So.2d at 111.