**Paul V. RUIZ, Plaintiff-Appellee,**

v.

**SHELL OIL COMPANY, Defendant-Appellee,**

**National Tank Company, Defendant-Appellant.**

**No. 26740.**

United States Court of Appeals
Fifth Circuit.

June 23, 1969.

Breard Snellings, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, La., for National Tank Co.

Joseph H. Hurndon, John Fox, Jr., New Orleans, La., for appellee, Ruiz.

John R. Peters, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for appellee, Shell Oil Co.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

AINSWORTH, Circuit Judge:

In this maritime personal injury suit, the principal question at issue is whether or not an injured employee was a borrowed servant at the time of his injury. If so, under the circumstances here, the injured employee's exclusive remedy would be for workmen's compensation rather than for damages in tort. Also at issue is the question whether the borrowed-servant issue should have been submitted to the jury by the trial judge.

Plaintiff's employer, Zenith, Inc., entered into a written contract with Shell Oil Company to perform welding services for the purpose of removing a dent from a metal cylindrical tank used for separating oil and water, which tank was situated aboard a barge belonging to Shell.

National Tank Company, which constructed and sold the tank to Shell, entered into an oral contract with Shell to provide supervisory assistance in repairing the tank, and furnished National's employee, Crowley, for that purpose.

There was no contract or agreement between Shell's two subcontractors, Zenith and National.

Plaintiff was severely injured when a hydraulic jack, weighing approximately 30 tons, which was being used in the repair operation, became disengaged,

**312**

slipped from its footing, was hurled through the air for a distance of about 12 feet and struck him. The barge upon which the tank was resting and on which the accident occurred was lying in navigable waters in the Intercoastal Waterway at Shell's terminal at Harvey, Louisiana.

Plaintiff brought suit against both National and Shell, predicated upon negligence of both defendants and unseaworthiness of the Shell barge. Shell, in turn, claimed over against National for indemnity and for costs and attorney's fees for defending the claim. The case was tried to a jury which rendered a verdict in favor of plaintiff and against National in the sum of $50,000. In response to written interrogatories the jury found that the barge was not unseaworthy, that both Shell and National were negligent but that only National's negligence was the proximate cause of the injury. The jury also found that National had breached its implied warranty to Shell for workmanlike performance and the breach had contributed to plaintiff's injury.

National's defense throughout these proceedings, including its motions for summary judgment, judgment n. o. v., and for a partial new trial, is that appellant Ruiz was its borrowed servant at the time the injury occurred, which legal theory, if established, would limit

National's liability to compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., since Ruiz' exclusive remedy would thus be under that Act. The trial court denied these motions and refused to submit the issue of the borrowed-servant theory to the jury. Based on the verdict, the court awarded judgment in favor of appellant and against National in the sum of $50,000 and allowed indemnity in favor of Shell against National for costs and attorney's fees.

We find no error in the court's rulings and affirm.

Various criteria have been considered in determining when the doctrine of borrowed servant is applicable. While no one of these factors, or any combination of them, is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship, the following tests have been given great weight.

■ The factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship, and what constitutes "control" has been the subject of much litigation.[1] National, in attempting to show that such a relationship existed, cites the testimony of several witnesses which it contends evidences its control over Ruiz and the work he was performing at the time of his injury.[2] We have,

1. Standard Oil Co. v. Anderson, 212 U.S. 215, 221, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909); Kiff v. Travelers Insurance Company, 5 Cir., 1968, 402 F.2d 129, 132; Gudgel v. Southern Shippers, Inc., 7 Cir., 1967, 387 F.2d 723, 725; McCollum v. Smith, 9 Cir., 1964, 339 F.2d 348, 351; Johnson v. Royal Indemnity Co., 5 Cir., 1953, 206 F.2d 561, 564; Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 1950, 180 F.2d 79, 83.

2. National's employee, Crowley, testified that he gave orders to Ruiz in regard to what to do and that his orders were accepted and carried out. An official of Zenith who signed the contract on behalf of his company to provide labor to Shell testified that it was possible for a worker such as Ruiz to take orders from an em-

ployee of a subcontractor such as National's Mr. Crowley. The same witness testified, however, that such an employee would still be taking instructions from the company for which he was working. Haase, the tool pusher for Zenith, said that he gave no orders to Ruiz but that he didn't know from whom Ruiz was taking orders. He said, however, that he was in charge of telling the Zenith crew what to do. The superintendent for Shell Oil Company, Montero, testified that Crowley supervised the employees of Zenith but he also said that the Zenith men were under the supervision of their own gang pusher, Mr. Haase. Ruiz admitted that he assisted Crowley who gave him orders on the job, and whatever Crowley wanted him to do he did, but he qualified that statement by saying that

however, carefully studied the record and find no element of control by National. The evidence indicates nothing more than cooperation between the several Zenith employees aboard the barge, under the direction of Zenith's tool pusher, with National's supervisor. In considering whether the power exists to control and direct a servant, a careful distinction must be made "between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking." Standard Oil Co. v. Anderson, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909). "Co-operation," as distinguished from "subordination," is not enough to create an employment relationship. Id., 212 U.S. at 226, 29 S.Ct. at 256.

Although a formal agreement between the two employers is not considered indispensable to the borrowed-servant relationship, the very terms "borrowed" and "loaned" connote some type of agreement, understanding, or meeting of the minds between the borrower and the lender. The cases cited by appellant consistently imply such an agreement. However, the record indicates that there was no type of understanding or agreement between Zenith and National. Nor was there any agreement or acquiescence by Ruiz that he be employed by National, another factor indicative of the borrowed-servant relationship. Standard Oil Co. v. Anderson, 212 U.S. at 220, 29 S.Ct. at 253.[3] Ruiz did not even know that the one National man aboard the barge, Crowley, was an employee of that company, but thought he was a Shell employee. Implicit in the borrowed-servant conception, and absent here, is temporary termination by the general employer of its relationship with the servant.[4] Other factors which have been considered are the furnishing by the temporary employer of the necessary instruments and the place for performance of the work in question,[5] employment of the servant over a considerable length of time, the fact that work being performed is that of the temporary employer,[6] and the customary right to discharge the servant and the obligation for payment of his wages.[7] None of these factors is remotely attributable to National.[8]

The evidence does not indicate that there was acceptance of responsibility for, or control over, Ruiz by National, or that there was relinquishment of that

---

Crowley "wasn't exactly giving" him any orders, he couldn't give him a "direct order," only a "request," and that he, Ruiz, would do whatever was in his power to comply.

The contract between Zenith and Shell supports absence of control by National over Zenith employees. It requires that Zenith furnish all "labor, supervision, machinery, materials, equipment and supplies necessary," and that Zenith "conduct all operations in [its] own name as an independent contractor and not in the name of or as agent for Shell."

3. See also Touchet v. Travelers Indemnity Company, W.D.La., 1963, 221 F.Supp. 376, 378.

4. Standard Oil Co. v. Anderson, 212 U.S. 215, 224, 29 S.Ct. 252, 255, 53 L.Ed. 480 (1909); Kiff v. Travelers Insurance Company, 5 Cir., 1968, 402 F.2d 129, 132.

5. Standard Oil Co. v. Anderson, 212 U.S. 215, 225, 29 S.Ct. 252, 256, 53 L.Ed. 480 (1909).

6. Linstead v. Chesapeake & O. Ry. Co., 276 U.S. 28, 34, 48 S.Ct. 241, 243, 72 L. Ed. 453 (1928); Standard Oil Co. v. Anderson, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909); Gudgel v. Southern Shippers, Inc., 7 Cir., 1967, 387 F.2d 723, 726.

7. Standard Oil Co. v. Anderson, 212 U.S. 215, 225, 29 S.Ct. 252, 255, 53 L.Ed. 480 (1909); Touchet v. Travelers Indemnity Company, W.D.La., 1963, 221 F.Supp. 376, 378. The power to employ and discharge and the question of who pays the wages need not, however, be determinative. See Linstead v. Chesapeake & O. Ry. Co., 276 U.S. 28, 34, 48 S.Ct. 241, 243, 72 L.Ed. 453 (1928).

8. See also Restatement (Second) of Agency § 220(2), p. 489 (1957); § 227, pp. 500, 501; 99 C.J.S. Workmen's Compensation § 47, p. 243.

responsibility or control by Zenith. Nor is there any evidence which could be inferred to create a borrowed-servant relationship between National and Ruiz. All the facts being overwhelmingly to the contrary, the court correctly refused to submit this issue to the jury. Boeing Co. v. Shipman, 5 Cir., 1969, 411 F.2d 365. This Circuit, the Seventh and Ninth Circuits have, in the absence of substantial evidence to the contrary, held the issue of whether a relationship of borrowed servant existed is a matter of law. Kiff v. Travelers Insurance Company, 5 Cir., 1968, 402 F.2d 129; Gudgel v. Southern Shippers, Inc., 7 Cir., 1967, 387 F.2d 723; McCollum v. Smith, 9 Cir., 1964, 339 F.2d 348.

National also objected in its brief on appeal to the trial court's indemnifying Shell for attorney's fees and costs incurred by it. However, there is no serious issue as to the propriety or correctness of the award.[9]

Affirmed.

9. See Lusich v. Bloomfield Steamship Company, 5 Cir., 1966, 355 F.2d 770, 776; Strachan Shipping Co. v. Koninklyke Nederlandsche S. M., N. V., 5 Cir., 1963, 324 F.2d 746, 747; Paliaga v. Luckenbach Steamship Company, 2 Cir., 1962, 301 F.2d 403, 410.