Randall E. TAYLOR,
Plaintiff-Appellant,
Cross-Appellee,

and

North-West Insurance, Co.,
Intervenor-Appellant,
Cross-Appellee,

v.

KAY LEASE SERVICE, INC.,
Defendant-Appellee,
Cross-Appellant.

No. 84–4445.

United States Court of Appeals,
Fifth Circuit.

June 3, 1985.

---

Ralph Brewer, Baton Rouge, La., Gary L. Honea, Magnolia, Miss., for plaintiff-appellant, cross-appellee.

Hopkins, Logan, Vaughn & Anderson, Robert H. Harper, Gulfport, Miss., for intervenor.

Daniel, Coker, Horton & Bell, J. Price Coleman, Frank C. Horton, Jackson, Miss., for defendant-appellee, cross-appellant.

Before WISDOM, WILLIAMS, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Randall E. Taylor, an employee of Rebel Drilling Co. (Rebel), who was seriously injured when part of a drilling rig, a V-door slide, fell on him, brought a negligence action against Kay Lease Service, Inc. (Kay Lease), the company which had transported the rig to the drilling site. The district court granted Kay Lease's motion for summary judgment based on deposition testimony which purported to establish that Kay Lease workers were the loaned servants of Rebel. Given that there was a master-servant relationship, the district court concluded that Taylor's exclusive remedy for his injuries is the Mississippi Workmen's Compensation Act. *See* Miss. Code Ann. § 71-3-9 (1972). We affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

Taylor was the floor hand or lead tong hand in a four-person drilling crew; Danny Phillips was the derrick hand; Lorne "Bubba" Bolyer was the chain hand; and their immediate supervisor was the driller, Johnny Ray Nugent. The next level of supervision was provided by the tool pusher, James Pecanty. Rebel also employed welders, including "Little Mac," to repair minor damage caused to the drilling equipment which was frequently moved from one drilling site to another.

Rebel contracted with Kay Lease to transport their equipment on their trucks from one site to another. Prior to a move, Rebel workers disassembled the rig. The loading of the rig onto Kay Lease's trucks was routinely done under the direction and supervision of Rebel's tool pusher or driller. Kay Lease's duties and responsibility began with the loading of the disassembled rig onto its trucks, involved transporting the rig to the new location, and ended when the rig was unloaded. At the new location, Rebel's tool pusher or driller again supervised the Kay Lease workers directing them where to place or "spot" everything.[1] Rebel workers would then reassemble the rig and begin drilling operations at the new site.

On April 15, 1981, the day before Taylor was injured, the following events occurred at the old drilling site, according to the deposition testimony of the chain hand, "Bubba" Bolyer:

We rigged down as usual everything except for flipping the V-door back and you're supposed to use the cat line to flip it back so it don't get tore up or nothing. Kay Lease hooked a winch truck onto the end of the catwalk and just pulled the catwalk out away from the rig and the

---

1. James Knight, a Kay Lease trucker, testified in his deposition that Rebel's tool pusher or driller would tell Kay Lease's truck pusher where to spot everything and the truck pusher would then pass on the instructions to the Kay Lease workers.

V-door fell and on its own weight broke the left ear ....[2]

It is undisputed that the broken ear was not repaired prior to Taylor's accident. Repair of the V-door's ears was considered a minor repair, and under the contract between Rebel and Kay Lease, minor repairs were the sole responsibility of Rebel.

The next day, April 16, Nugent, the driller, and Taylor went under the V-door[3] which was leaning against the rig with no connection at the top, and which was missing at least one of the ears needed for connection at the bottom, to jack up the drill floor. Just after Nugent emerged from under the door, the door fell on Taylor, who is now a paraplegic apparently as a result of the accident.

Taylor has received worker's compensation benefits from Rebel's compensation carrier, North-West Insurance Co. (North-West Insurance). North-West Insurance has been permitted to intervene in this action.

After the district court granted Kay Lease's motion for summary judgment, Taylor timely appealed the judgment as has the intervenor, North-West Insurance. Kay Lease has filed a timely cross-appeal concerning the alternative theories upon which the district court could allegedly have also granted summary judgment.

## ANALYSIS

### I. *Master-Servant Relationship*

The issue of whether employees are borrowed servants is often resolved as an issue of fact. *See, e.g., Gaudet v. Exxon Corp.*, 562 F.2d 351, 357–58 (5th Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978) and cases cited therein.

However, when the material determinative facts are not in dispute and no difference in result would occur based on any remaining disputed fact, summary judgment has been held to be appropriate as a matter of law. *Id.* at 358. We find that no material determinative facts have been placed in dispute as to whether Kay Lease's workers were the borrowed servants of Rebel and that no other facts would affect the outcome.

The Mississippi Supreme Court has held that "a fellow employee or a corporate officer or agent of a common employer [is] immune from an action at common law." *Ramsey v. Georgia-Pacific Corp.*, 511 F.Supp. 393, 401 (S.D.Miss.1981), *aff'd* 671 F.2d 1378 (5th Cir.1982) citing (*Brown v. Estess*, 374 So.2d 241 (Miss.1979)); *McCluskey v. Thompson*, 363 So.2d 256 (Miss. 1978). Of particular relevance to this case is the Mississippi "business enterprise concept" as applied to remedies available when an injured worker is covered by the Mississippi Workmen's Compensation Act, Miss. Code Ann. § 71-3-1 *et seq.* (1972): "common law actions by an injured worker covered by the Mississippi Workmen's Compensation Act can be maintained only against 'strangers to the business enterprise' being served at the time of the accident." *Ramsey*, 511 F.Supp. at 401. If the allegedly negligent party's employees are "loaned servants" or "borrowed employees" of the injured worker's employer, then the injured employee's exclusive remedy is the Mississippi Workmen's Compensation Act. *See id.* at 402. The district court relied heavily on the foregoing aspects of Mississippi law in formulating the question upon which it based its decision: "whether Kay Lease's employees were, at the time the damage to the ears was allegedly caused by them, employees of Rebel, for if

**2.** There is some dispute in the deposition testimony as to whether one or both ears were already broken prior to this move. However, it is undisputed that at least one ear was broken or missing by the end of this move. Although Nugent, the driller, testified that he *thought* he had told the tool pusher about the broken ear and that the tool pusher was going to send a welder out the next day morning to fix it, "Bubba" Bolyer had a more specific recollection that the driller had told a welder, "Little Mac," that the V-door needed fixing, and that "Little Mac" had said he'd do it the next day.

**3.** The son of the president of Rebel, Tracy Brooks Allen, who had been employed as a driller on a different shift than Nugent, testified in his deposition that every person working for Rebel on an oil rig is told: "Don't get under the V-door at any time."

they were the relationship of master and servant existed between them and under the provisions of the Workmen's Compensation Act Taylor's exclusive remedy was under the provisions of that Act." *Taylor v. Kay Lease Service, Inc.*, No. W83–0129(B) (S.D.Miss. filed June 14, 1984).

In determining whether or not Kay Lease's employees were loaned servants, the district court relied primarily on the factor of control over the employee's work. *See, e.g., Hebron v. Union Oil of California*, 634 F.2d 245, 247 (5th Cir.1981) ("the central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work"); *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir.1969) ("the factor of control is perhaps the most universally accepted standard for establishing an employer-employee relationship ...")[4] Control has been further defined as involving "a careful distinction ... 'between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking.'" *Id.* at 313 (citing *Standard Oil Co. v. Anderson*, 212 U.S. 215, 222, 29 S.Ct. 252, 254, 53 L.Ed. 480 (1909)).

The undisputed facts[5] in the record establish that Kay Lease employees received direction from Rebel's supervisor (tool pusher or driller) in both loading and unloading the rig. The V-door's ear was damaged during the loading the day before the accident according to the undisputed testimony of "Bubba" Bolyer. Thus, although supervision and control by Rebel may have been limited to loading and unloading and not have extended to the transporting of the disassembled rig, any negligence attributable to Kay Lease employees occurred while they were under the supervision and control of Rebel. Therefore, the district court did not err in granting summary judgment on the basis of Kay Lease's employees being loaned servants of Rebel.

## II. Other Grounds for Summary Judgment

We do not reach the other grounds for affirmance raised in Kay Lease's cross-appeal: 1) that Kay Lease under the terms of its contract with Rebel had no duty to repair the "minor" defect in the V-door; and 2) that the defect in the V-door was open and obvious to all of Rebel's employees, including Taylor; and 3) that Kay Lease was a subcontractor for Rebel.

AFFIRMED.

---

**4.** This Court has listed the following other factors that may determine the existence of a borrowed-servant relationship: 1) "agreement, understanding, or meeting of the minds between the borrower and the lender"; 2) an "agreement or acquiescence by the employee" to be employed by the temporary employer; 3) "the furnishing by the temporary employer of the necessary instruments and the place for performance of the work in question"; 4) "employment of the servant over a considerable length of time"; 5) "the fact that work being performed is that of the temporary employer"; 6) "the customary right to discharge the servant"; 7) "the obligation for payment of [the borrowed employee's] wages." *Ruiz*, 413 F.2d at 310. While we recognize that "no one of the factors noted as relevant by our jurisprudence

'is decisive, and no fixed test is used to determine the existence of a borrowed-servant relationship.'" *Alday v. Patterson Truck Line, Inc.*, 750 F.2d 375, 379 (5th Cir.1985) (quoting *Ruiz*, 413 F.2d at 312), in the case *sub judice*, we find that the relationship of the Kay Lease workers to Rebel is properly determined by the factor of control.

**5.** We note that all of the affidavits and depositions available to the district court were submitted by Kay Lease. Taylor's argument of disputed facts is not based on any evidence which he introduced in response to Kay Lease's motion for summary judgment, but on alleged inconsistencies in the evidence introduced by Kay Lease.